IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFF SPOERLE, NICK LEE,
KATHI SMITH, JASON KNUDTSON,
on behalf of themselves and all others
who consent to become Plaintiffs and
similarly situated employees,

                              Plaintiffs,

                    v.

KRAFT FOODS GLOBAL, INC.,
Oscar Mayer Foods Division,

                         Defendant.

OPINION AND ORDER

3:07-cv-00300-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This case presents a straightforward question:  does the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, require defendant Kraft Foods Global, Inc., to pay its employees for time they spend putting on and taking off items of safety and sanitation equipment that defendant's policies and federal law require the employees to wear?

      Plaintiffs contend that they are entitled to compensation because donning and doffing the equipment constitutes "work" under the FLSA.  Although defendant does not dispute plaintiffs' basic characterization, it argues that the work is not compensable under several

1

of the statute's exceptions involving "preliminary" and "postliminary" activities, "changing clothes" and "de minimis" acts.

In addition to their claim under the FLSA, plaintiffs assert state law wage and hour claims under Wis. Stat. §§ 109.03 and 103.02, as well as a claim for violations of Wis. Admin. Code §§ DWD 272.10 and 274.06, which impose requirements for employer record keeping. Defendant contends that plaintiffs' state law claims are barred under several theories of preemption and that Wisconsin law does not recognize a private right of action for plaintiffs' record keeping claim.

Plaintiffs filed this suit as a purported class action but they have not yet moved for class certification. They have stipulated with defendant to refrain from seeking class certification until the court resolves the defendant's motion for summary judgment. Having reviewed the parties' submissions, I conclude that defendant's motion for summary judgment must be denied in most respects. On the current record, I cannot conclude as a matter of law that the donning and doffing of the equipment at issue in this case is excluded from the protections of the FLSA. With respect to plaintiffs' state law claims, none of defendant's preemption arguments is persuasive. However, because plaintiffs have failed to show that they have a right to sue for enforcement of the record keeping requirements, I will grant defendant's motion for summary judgment with respect to that claim.

From the parties' proposed findings of fact and the record, I find the following facts

2

to be undisputed.

## UNDISPUTED FACTS

Defendant Kraft Foods Global, Inc. operates a meat processing plant in Madison, Wisconsin through its Oscar Mayer Foods Division.  Plaintiffs Jeff Spoerle, Nick Lee, Kathi Smith and Jason Knudtson are employees at the plant.

Defendant tracks its employees' hours of work using time clocks, which are located throughout the plant, typically right outside the "production area."  Using a credit card-like badge, employees clock in just before entering the production area and clock out for meals and at the end of their shift when they leave the production area.

Under federal law and company policy, employees who work in the production area must wear various items of "personal protective equipment."  This equipment includes a hard hat or bump cap, steel-toed shoes or sanitation boots, ear plugs, hairnet and beard net, safety glasses, a freezer coat (if necessary), gloves, plastic gloves, paper frock or plastic apron, sleeves, slickers (for employees that work in wet areas) or a cotton frock (employees may choose to wear cotton pants and a shirt instead, which the parties refer to as "career clothes").  Employees may be disciplined for failing to wear this equipment.

Employees must put on some of these items before clocking in.  Employees retrieve and put on cotton frocks or career clothes and steel-toed shoes or sanitation boots in a locker

3

room at the plant.   On their way to clocking in, employees put on ear plugs, hairnets and beard nets, which are kept in bins near the locker room.  (The parties do not identify where employees put on hard hats, bump caps, safety glasses and freezer coats, but they agree that employees must put on these items before clocking in.)  All of these items are owned by defendant and stored at the plant.  After walking to the time clock and swiping their time cards, employees put on plastic gloves, aprons and slickers.  (Neither side proposes any facts regarding what happens at the end of the shift, but it is reasonable to infer that it is the same as the beginning of the shift, that is, employees are paid for taking off gloves, aprons and slickers, but not for doffing the other items or for walking back to the locker room.)

The current collective bargaining agreement between plaintiffs and defendant does not guarantee compensation for the time spent donning and doffing personal protective equipment.

OPINION

A.  Fair Labor Standards Act

Although the Fair Labor Standards Act includes many different provisions, its core requirement can be reduced to a simple and now uncontroversial proposition:  employers must pay their employees a wage for all of the "work" that they do.  29 U.S.C. §§ 206 and 207; Smith v. Aztec Well Service Co., 462 F.3d 1274, 1285 (10th Cir. 2006); Alvarez v.

IBP, Inc., 339 F.3d 894, 902 (9th Cir. 2003).  There are two related exceptions to this rule that are relevant to this case.  Work may not be compensable under the FLSA if it (1) is "preliminary to or postliminary to" the employee's "principal"activities and if it occurs "prior to" or "subsequent to" the "workday," 29 U.S.C. § 254(a)(2); or (2) consists of "changing clothes," 29 U.S.C. § 203(o).  A third non-statutory exception has been carved out by the courts, which is whether a particular activity is "de minimis."

The FLSA does not define "work," but the Supreme Court has construed it broadly. One commonly cited definition comes from Tennessee Coal, Iron & Rail Co. v. Muscoda Local No. 123, 321 U.S. 590, 598 (1944): "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  But even this view may sound more restrictive than it actually is. The reference to "physical or mental exertion" does not mean that only heavy labor and solving equations are covered.  The Court has placed much greater emphasis on "[w]hether time is spent predominantly for the employer's benefit or for the employee's,"Armour & Co. v. Wantock,  323 U.S. 126, 133-34 (1944), on the ground that "[n]othing in the statute or in reason demands that every moment of an employee's time devoted to the service of his employer shall be directly productive."  Tennessee Coal, Iron & Rail Co. , 321 U.S. at 599; see also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 691(1946) (concluding that nonproductive activity was "work" because it "was under the

5

complete control of the employer").   Thus, the Court has concluded that "work" encompasses activities such as traveling on a railcar through a mine shaft, watching and guarding a building,  Tennessee Coal, Iron & Rail Co. , 321 U.S. at 599, and even standing and waiting, Armour & Co. , 323 U.S. at 133-34.

Defendant does not refute plaintiffs' assertion that donning and doffing the personal protective equipment is "work" under the Supreme Court's definition.  Rather, it argues that plaintiffs' conduct falls within the exceptions listed above.  I will consider each of those in turn.

1.  Preliminary and postliminary activities

        Under the Portal-to-Portal Act, certain activities are withdrawn from the pay mandates of the FLSA, including "activities which are preliminary to or postliminary to [a] principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities."  29 U.S.C. § 254(a).  Defendant believes that the donning and doffing of protective equipment constitutes noncompensable "preliminary" and "postliminary" activities.

Defendant's view might be plausible looking at the language of the statute in isolation, but it is completely untenable in light of the Supreme Court's interpretations of

6

the statute.  The question in <u>Steiner v. Mitchell</u>, 350 U.S. 247 (1956), was whether chemical plant employees were engaging in "preliminary" and "postliminary" activities under § 254(a) when they showered and changed their clothes immediately before and after working with toxic chemicals.  After reviewing the statute's legislative history, the Court concluded that Congress "did not intend to deprive employees of the benefits of the Fair Labor Standards Act where they are an integral part of and indispensable to their principal activities."  <u>Id.</u> at 256.  Applying this standard, the Court quickly rejected the employer's argument that the Portal-to-Portal Act relieved it of the obligation to pay its employees for the activities in dispute, stating that "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees."  <u>Id.</u>

In light of <u>Steiner</u>, it is difficult to credit any argument that the Portal-to-Portal Act applies in this case.  Like the clothes changing in <u>Steiner</u>, plaintiffs' donning of equipment is performed for the purpose of protecting the employee from work-related hazards and occurs immediately before entering the production area.  Because plaintiffs need to put on the equipment in order to perform their job safely, their doing so is "an integral and indispensable part" of a "principal activity."

It is indispensable and integral in another sense as well because plaintiffs are *required* by both company policy and federal law to don and doff the equipment.  <u>Ballaris v. Wacker</u>

7

Siltronic Corp., 370 F.3d 901, 911 (9th Cir. 2004) (whether activity is required by employer is relevant to question whether activity is integral and indispensable part of principal activities); Davis v. Charoen Pokphand (USA), Inc., 302 F. Supp. 2d 1314, 1322 (M.D. Ala. 2004) (same). In fact, employees at defendant's plant who fail to don the equipment may be subject to discipline. Thus, plaintiffs may not perform their jobs without the equipment.

Further, plaintiffs must don and doff the equipment at the plant, immediately before and after their productive activities. Employees do not have the option of keeping the equipment at home. Lemmon v. City of San Leandro, No. C 06-07107 MHP, 2007 WL 4326743, *5 (N.D. Cal. Dec. 7, 2007) (noting that courts have found donning and doffing to be principal activity under Steiner when occurring at work place); Abbe v. City of San Diego, Nos. 05cv1629 DMS (JMA), 06cv0538 DMS (JMA), 2007 WL 4146696, *5 (S.D. Cal. 2007) (same).

Defendant contends that these facts are insufficient to establish a "principal activity," citing Gorman v. Consolidated Edison Corp., 488 F.3d 586, 593 (2d Cir. 2007), which read Steiner as being limited to "workplace dangers that transcend ordinary risks." The court reasoned as follows:

> At issue in Steiner was exposure to corrosive and toxic substances that permeated a battery plant; at issue here is the security of a nuclear power plant. The analogy is, however, unsustainable. . . . Without the taking of the measures required, the

8

> environment of the battery plant could not sustain life—given the toxic substances in liquid, solid, powder and vapor form (and in the dust of the air) that "permeate[d] the entire [battery] plant and everything and everyone in it." <u>Steiner</u> therefore supports the view that when work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there, just as a diver's donning of wetsuit, oxygen tank and mouthpiece may be integral to the work even though it is not the (underwater) task that the employer wishes done.

<u>Id.</u> (citations omitted).

This interpretation of <u>Steiner</u> is truly bizarre. The court appears to be saying that the holding of <u>Steiner</u> does not apply unless the "work is done in a lethal atmosphere." In other words, unless the activity is necessary to prevent the employee from actually *dying*, it is not "integral" to a principal activity. From a public policy perspective, this reading is obviously troubling because it creates an uncomfortable distinction between hazards that kill and hazards that maim (or pose only a *risk* of death) and suggests that an employee is entitled to compensation for protecting herself from the former only.

Fortunately, <u>Steiner</u> does not support such a distinction. Although it is true that the facts of <u>Steiner</u> involved life-threatening risks, the Court did not limit its holding to that situation, but said only that the facts before it presented one of the "clear[est]" examples of an activity that was integral and dispensable to the principal activity. <u>Steiner</u>, 350 U.S. at 256. Further, the legislative history cited by the Court distinguished between a job that the employee "could not perform . . . without putting on certain clothes" and an activity that

was "merely a convenience to the employee and not directly related to the specific work." Id. at 258.  Because the equipment in this case is donned for safety purposes and is required by law and company policy, it cannot be said to be "merely a convenience" for the employee.

In Gorman the court also relied on the government's concession in Steiner that changing clothes "under normal conditions" would "ordinarily constitute 'preliminary' or 'postliminary' activities excluded from compensable work time." Steiner, 350 U.S. at 331. However, I agree with those courts that have concluded that donning and doffing safety equipment cannot be equated with "changing clothes . . . under normal conditions." E.g., Fox v. Tyson Foods, Inc., No. CV-99-BE-1612-M, 2002 WL 32987224, *11 (N.D. Ala. Feb. 4, 2002).  Most people do not need to put on a hard hat and safety goggles to perform their jobs.

Whatever doubt Steiner may have left on this question was resolved by IBP, Inc. v. Alvarez, 546 U.S. 21 (2005), another case involving the donning and doffing of protective gear (in that case, for workers in a meat plant) and walking to and from the production area. In Alvarez the Court did not explicitly hold that donning and doffing were "principal" activities under the Portal-to-Portal Act, but only because it did not have to.  All parties agreed that "in light of Steiner, the donning and doffing of unique protective gear are 'principal activities' under § 4 of the Portal-to-Portal Act." Id. at 32.  Using that position as a starting point, the Court went on to hold that if donning and doffing of protective gear

10

are "principal activities," this necessarily means that another "principal activity" is walking between the locker room (where the protective gear is donned and doffed) and the production area.  Id. at 34.

After Alvarez, there can be little doubt that donning and doffing protective gear at the beginning and end of the workday are "principal activities" under the Portal-to-Portal Act.  The Court could not have reached its conclusion regarding the walking time without concluding that donning and doffing protective gear are compensable activities.  Bishop v. United States, 72 Fed. Cl. 766, 780 (Fed. Cl. 2006) (concluding that in Alvarez Supreme Court "endorsed" the court of appeals' conclusion that donning and doffing of protective gear are "principal activities").  Further, the Court did not suggest that donning and doffing time was compensable only if the relevant gear was necessary to protect the employee from "a lethal atmosphere."

Defendant points to one sentence in Alvarez, 546 U.S. at 40, in which the Court stated that preshift activities may  be "necessary" but still not "integral and indispensable" to a "principal activity."   However, the Court made that observation in the context of discussing the time employees may wait before donning their equipment and after doffing it, an activity that is not at issue in this case.  Further, in concluding that such waiting time was "preliminary" and "postliminary," the Court emphasized that it was "two steps removed from the productive activity on the assembly line," id. at 42, and that, "unlike the donning

11

of certain types of protective gear, which is *always* essential if the worker is to do his job, the waiting may or may not be necessary in particular situations or for every employee," id. at 40 (emphasis in original).  Thus, although the sentence defendant cites may suggest that the line between "preliminary" and "principal" activities will not always be a clear one, there is no room left to argue after Alvarez that donning and doffing of protective gear are not "principal activities" within the meaning of the Portal-to-Portal Act.

Defendant cites Reich v. Oscar Mayer Foods Corp., No. 4:93CV204, 1995 WL 1765643, *2  (E.D. Tex. Mar. 2, 1995), which concluded that donning and doffing safety equipment were "preliminary" and "postliminary" to a "principal activity" under the Portal-to-Portal Act.  However, the reasoning of Reich is conclusory and it was decided before the Supreme Court decided Alvarez.  I do not find Reich to be persuasive.


2.  Changing clothes

Defendant's second line of defense is 29 U.S.C. § 203(o), which states:

> In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee.

For the purpose of this case, § 203(o) applies if two conditions are met: (1) the

12

activity at issue constitutes "changing clothes"; and (2) the collective bargaining agreement excludes "changing clothes" from compensation.  There is no dispute that the parties' collective bargaining agreement excludes from compensation any time spent changing clothes.  The question is whether donning and doffing protective equipment constitute "changing clothes" under the statute.

The FLSA does not provide a definition for clothes, leaving the courts to struggle to come up with their own.  But even the most liberal construction would not encompass some of the items at issue, such as earplugs and safety goggles, a point that defendant does not deny.  Dft.'s Br., dkt. #13, at 11 (acknowledging that earplugs and hair nets may not be "clothes").  Although defendant argues that the remaining articles are "clothes" under § 203(o), it fails to provide its own definition.  Instead, it simply cites a few cases that have found similar articles to fall under the exclusion.  None of these cases is persuasive.  Like defendant, the court in one case concluded that the items at issue fell within § 203(o) but it failed to provide *any* definition of clothes. Kassa v. Kerry, Inc., 487 F. Supp. 2d 1063, 1067 (D. Minn. 2007).  The others simply adopt a definition of "clothes" as anything that covers the body, with little or no explanation.  Anderson v. Cagle's, Inc., 488 F.3d 945, 955-56 (11th Cir. 2007); Bejil v. Ethicon, Inc.,  269 F.3d 477, 480 n.3 (5th Cir. 2001).

The view of the courts in Anderson and Bejil is inherently problematic because even those courts (and defendant) acknowledge that some articles used to cover the body may not

13

be properly included within the meaning of "clothes" under § 203(o), such as armor or a space suit. Dft.'s Br. at 10; Anderson, 488 F.3d at 955 ("We recognize that there may be limits to the application of § 203(o) based on the nature or purpose of the garments at issue."); see also Kassa, 487 F. Supp. 2d at 1067 ("whether a particular item of protective gear should be considered "clothes" under § 203(o) depends on the exact nature of the item and the exact circumstances under which it is used").  Neither defendant nor these courts have provided a rationale for this distinction or a principle for determining when articles of protective gear are "clothes" under § 203 and when they are not.  The logic appears to be little more than "I know it when I see it."  Jacobellis v. Ohio, 378 U.S. 184, 197 (1964) (Stewart, J., concurring).

The argument may be that any equipment worn is a piece of "clothes" under § 203(o) unless it is difficult to put on and take off.  Cf. Reich, 38 F.3d at 1125 (concluding that time to don and doff items of protective equipment was "work" because it was "heavy and cumbersome, and it requires physical exertion, time, and a modicum of concentration to put them on securely and properly").  Alternatively, the view may be similar to the one in Garmon, that only articles designed to prevent life-threatening hazards are deemed worthy of FLSA protection. But neither of these rationales is supported by any particular definition of "clothes," the purpose of the FLSA or the meaning of "work" as defined by the Supreme Court, which has consistently rejected a view of work that is limited to physically demanding

14

activities.

Rather, I agree with the court in <u>Fox</u>, 2002 WL 32987224, at *6-7, that "changing clothes" is "an everyday, plain-language term that describes what most people do every day—taking off pajamas to put on work clothes in the morning, or taking off dress clothes to put on casual wear in the evening." This view makes the relevant questions straight forward: Is the article something the employee would normally wear anyway (or does it replace such clothing)? Or is it something the employee wears in addition to those clothes and is required to do so for a job-related reason? Under this understanding of "changing clothes," putting on a uniform would not be covered under the FLSA under ordinary circumstances, <u>e.g.</u>, <u>Turner v. City of Philadelphia</u>, 262 F.3d 222 (3d Cir. 2001), but donning and doffing equipment used to protect against hazards particular to the workplace would be covered.

As the court explained in <u>Fox</u>, 2002 WL 32987224, at *6-7:

> The donning of [sanitation and safety] equipment is much different than the time spent by a police officer putting on a uniform and strapping on a holster. The uniform is "clothes" because it takes the place of the clothing the officer was wearing before work. Furthermore, . . . a police officer may drive to work in his uniform . . . . The equipment at issue here cannot be regarded as mere analogs to everyday clothing, like a uniform might be; the equipment is necessary not for the convenience or modesty of the employee, but required for the very specific needs of the employer for sanitation and safety.

This construction of the statute is consistent with both the purpose of § 203(o) and

15

sound policy.  As noted by the court in <u>Anderson</u>, 488 F.3d at 958, the purpose of § 203(o) was similar to that of the Portal-to-Portal Act, which was to prevent overly expansive interpretations of the FLSA that would impose liability for activities that employers could not have reasonably anticipated and were largely outside the employer's control, such as traveling between home and work.  <u>Alvarez</u>, 546 U.S. at 26.  Like commuting, employers have no control over an employee's dressing habits at home.  Further, because dressing is something that everyone must do anyway, it is inconsistent with the meaning of "work." Similarly, "washing" (also excluded by § 203(o)), is an activity that employees perform regardless of their particular job responsibilities.

The same cannot be said for donning and doffing safety and sanitation equipment on the work site.  Those are activities performed for the employer, for a uniquely job-related purpose and are under the employer's control.  Also important is the safety-related purpose of this equipment.  Without an explicit mandate, one would not expect that Congress intended to allow employee safety and sanitation to become a bargaining chip in contract negotiations.  <u>Alvarez</u>, 339 F.3d at 905 ("[I]t would not be in the interest of public policy to allow disincentives for employers and employees to use government-mandated personal protective equipment.") Accordingly, I cannot conclude that defendant has shown as a matter of law that the items of personal protective equipment at issue in this case are "clothes" within the meaning of § 203(o).

3. <u>De minimis</u>

Defendant's final argument under the FLSA is that the amount of time it takes employees to don and doff their equipment and walk between the locker room and the production area is "de minimis" and is therefore not compensable.  I must reject defendant's argument for two reasons.

First, defendant has adduced no evidence regarding the amount of time it takes to perform the activities at issue.  Because defendant seeks to rely on an exception to the rule, it is defendant's burden to prove that the exception applies.  <u>Walling v. General Industries Co.</u>, 330 U.S. 545, 547-48 (1947); <u>Yi v. Sterling Collision Centers, Inc.</u>, 480 F.3d 505, 507 (7th Cir. 2007) ("[T]he burden of proving entitlement to an exemption is on the defendant.").  Thus, defendant's failure to adduce evidence on this point is fatal to its argument.

Defendant suggests that the court could take judicial notice of the fact that the time in question is de minimis, but it cites no cases in which a court has done so.  In fact, the Supreme Court expressly declined to rule on the question in <u>Anderson</u>, 328 U.S. at 692, so that "the trier of facts [could] mak[e] more definite findings as to the amount of walking time in issue."  As in <u>Anderson</u>, the greatest variable in this case involves walking time.  The diagrams submitted by defendant suggest that the plant is a large one, making it plausible that walking time alone is several minutes.

17

Second, even if the total time at issue is only a few minutes, this would not necessarily mean that the time was not compensable.  The "de minimis" exception has no statutory basis and <u>Anderson</u> is the only case in which the Supreme Court considered the exception's application.  (Apparently, in <u>Alvarez</u> the parties did not raise the issue before the Supreme Court and the Court ignored it.)  Although a number of courts have concluded that any task or group of tasks is not compensable if it takes less than 10 minutes, <u>e.g.</u>, <u>Reich</u>, 38 F.3d at 1126, no court has explained why 10 minutes of work is worthy of compensation but 9 minutes and 59 seconds is not.  In <u>Anderson</u>, the Court did not suggest that the exception was meant to be a judgment that an employee's work is free for the employer once it falls below some arbitrary amount of time.  Rather, the Court stated that in some instances compensating employees for "a few seconds or minutes of work" will not be feasible "in light of the realities of the industrial world."  <u>Id.</u>

This suggests a standard that considers not just the time involved, but also the difficulty of measuring that time.  In other words, the need to compensate an employee for her work must be weighed against the cost or difficulty of providing compensation.  As the amount of time decreases for an employee to perform tasks, so does the employer's duty to provide compensation for those tasks when doing so would impose an administrative cost. <u>Cf.</u> <u>Tennessee Coal, Iron & Rail Co.</u>, 321 U.S. at 603 ("This does not foreclose, of course, reasonable provisions of contract or custom governing the computation of work hours where

18

precisely accurate computation is difficult or impossible.")   However, when providing compensation for a task imposes no additional burden on the employer, there is no justification for denying the employee compensation for that task, regardless how fast the task was performed.   Any other rule would deny employees "the just remuneration guaranteed them by the Act for contributing their time, liberty and strength primarily for the benefit of others."   Id.   After all, many jobs could be divided up into tasks that take only a few minutes a piece.   Taken to its logical conclusion, a "de minimis" rule that focuses only on time could swallow up an entire shift.

This understanding is consistent with the recent holding of the Court of Appeals for the Third Circuit, which stated in a similar case that the "de minimis" exception

> applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

De Asencio v. Tyson Foods, Inc., 500 F.3d 361, 374-75 (3d Cir. 2007).   Other courts have reached a similar conclusion that they must consider the administrative burden on the employer when determining whether the "de minimis" exception applies.   E.g, Lindow v. United States, 738 F.2d 1057, 1063 (9th Cir. 1984) (courts should consider "the practical administrative difficulty of recording the additional time").   Because defendant has not

19

adduced any evidence that it would be difficult to compensate plaintiffs for donning and doffing the personal protective equipment, I cannot conclude that those activities are "de minimis" as a matter of law.

Defendant makes a number of new arguments in its reply brief, none of which is persuasive and in any event may not be considered because plaintiffs had no opportunity to respond to them.  Nelson v. LaCrosse County District Attorney, 301 F.3d 820, 836 (7th Cir. 2002).  Accordingly, I must deny defendant's motion for summary judgment with respect to plaintiff's claims under the FLSA.

### B.  State Law Claims

Plaintiffs bring three state law claims: (1) failure to pay wages, as required by Wis. Stat. § 109.03; (2) failure to pay over time, as required by Wis. Stat. § 103.02; and (3) failure to keep adequate records, as required by Wis. Admin. Code §§ DWD 272.10 and 274.06.  Defendant has moved for summary judgment on all three claims, primarily on grounds unrelated to the merits.  Defendant says that all of plaintiffs' state law claims are preempted by federal law and that there is no right of action under Wisconsin law for failing to keep records.

### 1.  Preemption

20

Defendant identifies four different theories of preemption that it believes apply in this case: (1) "complete dominance"; (2) "Garmon preemption"; (3) "Machinists preemption"; and (4) preemption under § 301 of the Labor Relations Management Act (29 U.S.C. § 185(a)). Each of defendant's theories fails.

What defendant calls in its brief in chief "complete dominance" preemption (a term that is not used in the case law to describe any theory of preemption) becomes a theory of conflict preemption in defendant's reply brief. Defendant says that any state law requiring compensation for the activities at issue in this case would conflict with § 203(o), which defendant says "authorizes parties to negotiate over donning and doffing activities and exclude them from compensable hours worked." Dft.'s Reply Br., dkt #24, at 18. But this argument is contingent on a conclusion that the donning and doffing of personal protective equipment falls within the meaning of "changing clothes" under § 203(o). Because I have rejected that conclusion, I must similarly reject defendant's argument of conflict preemption. If § 203(o) permits *federal* law claims under the FLSA for donning and doffing personal protective equipment, there is no conflict between § 203(o) and a *state* law that permits such a claim.

Defendant's reliance on San Diego Building Trades Council v. Garmon, 359 U.S. 236, 244-45 (1959), and Lodge 76, International Associationn of Machinists and Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission, 427 U.S. 132 (1976),

21

fares no better.  Garmon "forbids state and local regulation of activities that the [National Labor Relations Act] protects or prohibits or arguably protects or prohibits," Cannon v. Edgar,  33 F.3d 880, 884 (7th Cir. 1994), and Machinists "prohibits state and municipal regulations of areas that Congress left to the free play of economic forces," id. at 885.

Neither Garmon nor Machinists applies.  Defendant's argument under Machinists again relies on an assumption that Congress has expressed its intent to make the collective bargaining process the sole method of obtaining compensation for donning and doffing of personal protective equipment.  However, as I discussed above, the FLSA supports a view that Congress intended to take those activities *away* from the vagaries of collective bargaining.

With respect to its argument under Garmon, defendant fails to identify any provision of the NLRA that bars plaintiffs' state law claims.  It cites 29 U.S.C. § 158(d), which it says preempts plaintiffs' state law claims because § 158(d) requires employers to engage in collective bargaining with respect to "wages" and "hours."  Defendant appears to hold the view that if Congress requires employers  to engage in collective bargaining on a particular matter, states are powerless to impose any requirements that touch on any aspect of that matter.  If such a state law is allowed to survive, defendant reasons, employers will be "forced" to choose between following federal law (which requires bargaining) and state law (which imposes a non-negotiable requirement).

22

Defendant's alleged dilemma is illusory.  If defendant's view of the law were correct, it would mean that defendant was being forced to violate the law continually.  Of course, *federal* law imposes numerous requirements that limit defendant's ability to engage in collective bargaining on issues related to "wages" and "hours," but this does not mean that defendant is violating its duties under § 158(d) by complying with those other laws.  Section 158(d) simply imposes a duty to bargain "in good faith."  Obviously, if state or federal law has removed a particular issue from the bargaining table, there is no bad faith in failing to engage in negotiating on that issue.  <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 130 (1994) ("[W]e have never suggested that labor law's bias toward bargaining is to be served by forcing employees or employers to bargain for what they would otherwise be entitled to as a matter of course.")

Further, adopting defendant's view would mean that states are barred from enacting almost any labor legislation. Section 158(d) requires employers to engage in bargaining not only with respect to "hours" and "wages" but also "terms and conditions of employment" in general.  Thus, defendant's view is that federal law preempts any state law claim involving a matter that is subject to collective bargaining.  This argument simply has no support in the law, under any theory of preemption.  "[F]ederal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship."  <u>Douglas v. American Information Technologies Corp.</u>,  877 F.2d 565, 569

(7th Cir. 1989). Thus, it is not surprising that defendant has failed to cite any cases adopting its view of preemption under <u>Garmon</u>.

Finally, defendant relies on 29 U.S.C. § 185(a) (§ 301 of the Labor Relations Management Act), which preempts state law claims that require interpretation of a collective bargaining agreement. <u>Chicago District Council of Carpenters Pension Fund v. Reinke Insulation Co.</u>, 464 F.3d 651, 657 (7th Cir. 2006). That section has no application in this case because plaintiffs' claims have nothing to do with enforcing or interpreting a collective bargaining agreement. Defendant did not even attempt to explain how plaintiffs' claims required an interpretation of the collective bargaining agreement until its reply brief, in which it argued weakly that plaintiffs' state law claims will require interpretation of the agreement terms "hours worked" and "regular rate of pay." Dft.'s Reply Br., dkt, #24, at 26.

Defendant fails to explain why construction of those terms is necessary. Neither side suggests that there is any dispute over the "regular rate of pay." Although the "hours worked" are in dispute, this is a dispute over the meaning of state and federal law, not the collective bargaining agreement. Defendant may have to *calculate* the hours and rate of pay to determine damages, but that is not enough to trigger preemption. <u>Livadas</u>, 512 U.S. at 124-25; <u>In re Bentz Metal Products Co., Inc.</u>, 253 F.3d 283, 285 (7th Cir. 2001) ("[A] state law claim is not preempted if it does not require interpretation of the [collective bargaining agreement] even if it may require reference to the [agreement].")

24

Defendant cites numerous cases of the court of appeals but none is instructive.  In each case, it was impossible to decide the state law claim without construing a disputed provision in the collective bargaining agreement.  <u>Baker v. Kingsley</u>, 387 F.3d 649, 659 (7th Cir. 2004) (finding preemption under §185(a) because success on state law claim required determination under collective bargaining agreement whether employees were "terminated or . . . are permanently laid off, pursuant to Section 8(I)(b) of this Agreement"); <u>Kimbro v. Pepsico, Inc.</u>, 215 F.3d 723, 725 (7th Cir. 2000) (tortious interference with contract claim preempted because claim was really one for violation of collective bargaining agreement); <u>Atchley v. Heritage Cable Vision Associates</u>, 101 F.3d 495, 500 (7th Cir. 1996) (state law wage claim preempted because it turned on "whether there was an obligation under the [collective bargaining agreement] to provide the payments at a certain time and, if so, whether the employer breached that implied contract provision"); <u>Douglas</u>, 877 F.2d at 571 (claim for intentional infliction of emotional distress preempted because determination whether conduct was "extreme and outrageous" would turn on rights granted under collective bargaining agreement).

The only case addressing a similar issue was cited by plaintiffs (and ignored by defendant until its reply brief).  In <u>United Food & Commercial Workers Union, Local 1473 v. Nestle USA, Inc.</u>, No. 06-C-595-S, 2006 WL 3474198, *2 (W.D. Wis. Nov. 29, 2006) (Shabaz, J.), the court considered whether § 185(a) preempted state law claims for donning

25

and doffing "work clothes." The court rejected the defendant's arguments that it did, concluding that all of the factual and legal determinations in the case were "irrelevant" to the collective bargaining agreement.   Defendant criticizes plaintiffs for relying on this case because it is nonprecedential (calling plaintiffs' discussion of the case "inappropriate" and a "cheap shot"), but the same could be said of any district court opinion.  In any event, I agree with plaintiff that § 185(a) does not preempt plaintiffs' state law claims because defendant has failed to show that it is necessary to interpret any provision of the collective bargaining agreement in order to decide those claims.

## 2.   Record keeping claim

Plaintiffs devote one sentence of their brief to their argument that Wisconsin law recognizes a private cause of action for an employer's failure to keep adequate records:  "It is settled Wisconsin law that employees can enforce [the regulations requiring record keeping, Wis. Admin. Code §§ DWD 272.10 and 274.06] under § 109.03(5).  German v. Wisconsin Dept. of Transportation, [2000 WI 62,] 235 Wis. 2d 576, 586-87, 612 N.W.2d 50 (2000)."  Plts.' Br., dkt. #21, at 36.  That is incorrect.  Section 109.03(5) authorizes a cause of action "for the full amount of the employee's wages."   It has nothing to do with record keeping.  The question in German, 2000 WI 62, at ¶2, was whether employees could sue under § 109.03(5) for *wages* they believed they were due for meal breaks.   The supreme

court did not hold that the record keeping regulations could be enforced under § 109.03(5) or any other statute. In fact, the court did not even discuss those regulations.

Plaintiffs provide no other authority for a private right to enforce the record keeping regulations. Without a showing that the legislature intended to create a private civil remedy, plaintiffs cannot seek relief in this court. <u>Antwaun A. v. Heritage Mutual Insurance Co.</u>, 228 Wis. 2d 44, 66, 596 N.W.2d 456 (1999). Defendant's motion for summary judgment will be granted with respect to this claim.

3. <u>Merits</u>

Defendant does not develop a separate argument related to the merits of plaintiffs' state law claims, but says only that the standards are the same under state and federal law regarding whether an activity is "de minimis" or "preliminary" or "postliminary." Because I have rejected defendant's arguments on these issues on plaintiffs' federal claim, it is unnecessary to consider them again with respect to plaintiffs' state law claims.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant Kraft Foods Global, Inc. is GRANTED with respect to plaintiffs' claim under Wis. Admin. Code §§ DWD 272.10 and 274.06. Plaintiffs' complaint is DISMISSED with respect to that

27

claim.  Defendant's motion for summary judgment is DENIED in all other respects.  The

clerk of court is directed to set a date for a scheduling conference before Magistrate Judge

Stephen Crocker to determine a new deadline for filing a motion for class certification and

to make any other necessary adjustments to the schedule.

Entered this 31st day of December, 2007.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

28