UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JEFF SPOERLE, NICK LEE, KATHI
SMITH, JASON KNUDTSON, on
behalf of themselves and all others
who consent to become Plaintiffs
and similarly situated employees,

      Plaintiffs,

  v.

KRAFT FOODS GLOBAL, INC.,
OSCAR MAYER FOODS DIVISION,

      Defendant.

Case No. 07-C-0300-C

---

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION OF STATE LAW CLAIMS AND FOR
CERTIFICATION OF FEDERAL CLAIMS AS COLLECTIVE ACTION**

---

Plaintiffs hereby submit their Reply Brief in Support of their Motion for Class Certification of State Law Claims and For Certification of Federal Claims as Collective Action.

**I. Introduction**

In their Opening Brief ("Pl. Br."), Plaintiffs state they did not intend to seek certification of the FLSA claims as a collective action because they did not desire to send notice to potential opt-in Plaintiffs. Plaintiffs then set forth their evidence in support of seeking Rule 23(b)(3) certification of its state law claims.

Kraft nevertheless insists that this Court must apply the standards developed under Section 216(b) for certification of this case as a collective action. Kraft cites no authority supporting its position that a court must certify a case as

a collective action where plaintiffs do not seek notice, and Plaintiffs are unaware of any such authority. However, in the event this Court deems its necessary to certify this case as a collective action under Section 216(b), Plaintiffs show below that these standards are satisfied here.

With respect to certification of the state law claims under Rule 23, Kraft does not even address, much less seek to distinguish, the many cases Plaintiffs cite certifying similar state law wage and hour claims. Instead, Kraft reiterates an argument this Court just rejected in Sjoblom v. Charter Communications, LLC, No. 07-CV-0451-BBC, 2007 WL 4560541, *4-5 (W.D.Wis., Dec. 19, 2007) that state law class actions are inherently incompatible with FLSA opt-in actions. And Kraft's substantive arguments that the prerequisites of Rule 23(a) are not satisfied and that this action should not be certified as a Rule 23(b)(3) class are based upon facts different from those it presented to this Court in support of its motion for summary judgment, which conceded a policy of not paying plaintiffs for donning and doffing PPE and walking time.

## II.  Plaintiffs are Similarly Situated Under Section 216(b).

Assuming arguendo it is necessary to certify this case under Section 216(b), despite Plaintiffs' decision not to seek dissemination of court-approved notice to potential Plaintiffs, Plaintiffs contend that they are similarly situated under this provision. While Kraft has not filed a motion to decertify, discovery is not yet closed, and, indeed, has not even been conducted regarding absent class members, Plaintiffs maintain they can satisfy the more rigorous second step of the two-step process followed in certifying collective actions under Section 216(b). Sjoblom, at * 8.

In Frank v. Gold'n Plump Poultry, Inc., 2007 WL 2780504, *3 (D.Minn., Sept. 24, 2007), the court explained that a decertification inquiry examines several factors, "including the factual and employment settings of the individual plaintiffs, any defenses that appear to be individual to each plaintiff, and fairness and procedural considerations." Applying the first factor, Kraft ignores it has already conceded the named plaintiffs are similarly situated as the opt-in plaintiffs regarding their donning and doffing activities in its factual submissions submitted in support of its motion for summary judgment. Kraft's Quality Systems Manager, Ray Ladell, submitted a chart identifying the items of PPE (hardhat, bump cap, steel toed shoes, frock, ear plugs, hairnet, beardnet, sanitation boots, freezer coats and career clothing), and identifying the departments requiring all hourly employees to don and doff the PPE before punching in. Affidavit of Ray Ladell In Support of Kraft Foods Motion for Summary Judgment, dated September 17, 2007, Exh. 1; see also Affidavit of Greg Nealis, dated September 13, 2007.

This Court relied on these averments in making the following factual findings for purposes of resolving this motion:

> Employees must put on some of these items [of PPE] before clocking in. Employees retrieve and put on cotton frocks and steel-toed shoes or sanitation boots in a locker room at the plant. On their way to clocking in, employees put on earplugs, hairnets and beardnets, which are kept in bins near the locker room. (The parties do not identify where the employees put on hard hats, bump caps, safety glasses and freezer coats, but they agree employees must put on these items before clocking in.)

Slip Opinion dated December 31, 2007, pp. 3-4. Plaintiffs maintain these are the essential facts establishing the named plaintiffs are similarly situated as the opt-

3

in plaintiffs, which facts are accurately set forth in the named plaintiffs' declarations, and not disputed by Kraft.

Kraft now seeks to deviate from these basic facts by submitting a wealth of declarations from individual employees showing trivial differences in the order in which certain employees don the PPE, the speed at which they change their clothes, the routes employees choose to walk to their work stations, the speed at which they walk to or from their work stations, and the employees' moods while they are engaging in these activities. Kraft. Br. pp. 5-8, 23-26.

The Frank court explained the flaws of this dwelling on the trees for the forest:

> If one zooms in close enough on anything, differences will abound; even for a single employee doing a single job, the amount of time that she spends donning and doffing on Monday will differ, at least minutely, from the amount of time that she spends donning and doffing on Tuesday. But plaintiffs' claims need to be considered at a higher level of abstraction.

Id. at * 4. There, the court rejected the employer's claim it did not even have a policy regarding paying employees for donning and doffing, but allowed individual supervisors to make this decision. "The bottom line is that Gold'n Plump has, at a minimum, decided not to require that its employees be paid for donning and doffing. That no-policy has allegedly injured all members of the putative class and is properly challenged through a class action." Id. at 3. Likewise, Kraft here does not deny its policy is not to pay plaintiffs and the potential opt-ins for time they spend donning and doffing the identified items of PPE and for walking to and from their time clocks after or while they are doing so. This policy suffices to make plaintiffs and the potential opt-ins similarly

4

situated for purposes of a Section 216(b) decertification inquiry.  See Moss v. Crawford & Company, 201 F.R.D. 398, 410 (W.D. Pa., 2000) ("… variations in the plaintiffs' duties, job location and hourly billing rates do not differentiate the collective basis of the class to the extent that it defeats the primary objectives of a Section 216(b) action.")  There is little question that the employees in the huge meat slaughtering and processing plants in IBP Packing, Inc. v. Alvarez, 546 U.S. 21 (2005) and DeAscencio v. Tyson Foods, 2007 WL 2505583 (3rd Cir. September 6, 2007) had exactly the same minor differences in their procedures for donning and doffing of differing items of PPE and walking activities to and from their locker rooms to their time clocks as Kraft points out here; yet, these differences did not prevent those cases from being certified as collective actions.

 Frank also rejected Kraft's arguments (Kraft Br. pp. 27-8) that it has individualized defenses regarding whether donning and doffing are considered "work" under the FLSA, whether they constitute preliminary or postliminary activities, or whether they are de minimus as presenting common legal questions that will likely be resolved on a class wide basis, which "weigh in favor of class certification, not against it."  Id. at 4 (original emphasis).

 Finally, the fairness and procedural factors in favor or Section 216(b) actions are "(1) to lower costs to plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity."  Moss v. Crawford & Company, supra, 201 F.R.D. at 410.  Both factors militate in favor of certification here.  To deny certification would require hundreds of individual trials for all opt-in plaintiffs of the same legal and factual issues regarding

5

whether Kraft is required to pay employees for time spent donning and doffing the same items of PPE and walking to their time clocks, which individually small claims the individual plaintiffs lack the resources or incentive to pursue.

Thus, even if the second-step Section 216(b) analysis is applied to this undeveloped record, there is little question that the named plaintiffs are similarly situated as the opt-in plaintiffs in that all are denied pay for time spent donning and doffing the identified items of PPE and walking to and from their time clocks.

### III. Section 216(b) Collective Actions are not Incompatible with Rule 23 Certification of State Law Claims.

Kraft persists in urging this Court adopt the minority line of cases holding that there is an inherent incompatibility between Section 216(b) opt-in collective actions and Rule 23(b)(3) opt-out certification of state law claims, despite this Court's recent rejection of this argument in Sjoblom, at * 4-5 and Judge Shabaz' certification of state law claims in an FLSA donning and doffing case in Musch v. Domtar Industries, Inc., Case No. 07-CV-5243-jcs (W.D. Wis., Jan. 30, 2008) (Kaplan Aff., Exh. 7, p. 49, n. 2). Kraft Br. pp. 20-2. Kraft's claims assume this Court will sustain its motion to strike the over 700 consents that have been filed.

Even if this motion is granted, it does not follow that the potential plaintiffs will be so hopeless confused that they will be unable to decide whether opt-in to the FLSA claims or opt-out of the Rule 23 state law claims. A properly worded notice can cure any deficiencies this Court finds in the prior consents. At any rate, as in Sjoblom, if the FLSA claims are separated from the state law claims, plaintiffs would still at some point receive two separate notices "concerning almost identical facts." Id at * 5.

6

### IV. The State Law Claims Should be Certified Under Rule 23(b)(3).

Kraft does not directly respond to, much less dispute, any of the authorities Plaintiffs cite in support of their contentions that this case is certifiable under Rule 23(b)(3). Instead, Kraft essentially argues past Plaintiffs in questioning whether the criteria set forth in Rule 23(a) are met and whether the class may be certified under Rule 23(b)(3). Kraft has not cited any cases denying Rule 23(b)(3) certification to state law claims in donning and doffing cases and Plaintiffs are not aware of any.

Kraft does not question the propriety of Plaintiffs' proposed class definition, but raises issues regarding the change from the proposed definition in the amended complaint which used the term "production employees" to the proposed "hourly employees" and the change in the estimate of the proposed class size from 1,500 in the complaint to 1,200. Neither claim militates against acceptance of the proposed class definition. The term "hourly employees" is more precise than the term "production employees" in that it includes hourly maintenance employees whom may not be considered "production" employees. Both production and maintenance employees are hourly employees, so this term ensures that both fall within the proposed class definition.

Plaintiffs were uncertain regarding the proposed class size because it was unclear how many former employees who were terminated since May 30, 2004, were included. Kraft's discovery responses indicate that approximately 450 hourly employees were terminated since May 30, 2004. Supplemental Declaration of Kurt C. Kobelt, dated March 21, 2008 (Suppl. Kobelt Decl.) ¶ 8. If

7

one accepts Kraft's assertion that there are currently 930 hourly employees (Second Nealis Aff. ¶ 4), and adds the 450 terminated employees, the approximate class size is 1,380, which is in between the two estimates. At this point, this estimate is sufficiently precise for the narrow purpose of concluding there exists sufficient numerosity to qualify as a class action.

### A. The Named Plaintiffs' Claims are Typical of Those of the Class.

Kraft does not question Plaintiffs' contention that the commonality criteria of Rule 23(a)(2) is satisfied, but maintains Plaintiffs claims are not typical under Rule 23(a)(3). It contends that because those class members who work less than 40 hours per week would not be entitled to recover overtime under Counts I and IV of the Amended Complaint, the typicality standard is not satisfied. Kraft Br. p. 31.[1]

Kraft grossly misconstrues the liberal test for typicality. As this Court noted in Rozema v. The Marshfield Clinic, 174 F.R.D. 425, 437 (W.D. Wis., 1997), the "question of typicality is related closely to commonality," which Kraft concedes is met here. This Court has further explained that "in considering the typicality requirement, a court asks specifically whether the class representatives have suffered the same kind of injury as other members of the class. (citation omitted) A named plaintiff's claim is typical if it is based on the same legal theory and arises from the same course of conduct alleged by the other members of the proposed class." Blihovde v. St. Croix County Wis., 219 F.R.D. 607, 617 (W.D. Wis., 2003).

---

[1] Kraft also purports to quote from page 2 of Plaintiffs' brief, but this quote does not appear on page 2 or elsewhere in the brief. Kraft Br. p. 31.

8

Thus it is immaterial whether certain members of the proposed class work less than 40 hours per week and may not therefore be eligible to recover overtime under Counts I and IV of the Amended Complaint. The fact remains that these class members would still recover straight time pay for time spent donning and doffing and walking under the same legal theory advanced by the named plaintiffs under Count III alleging nonpayment of wages under state law. More important, this contention fails to examine the relationship between the claims of the named Plaintiffs and the remaining class members; both are similarly situated in this regard.

The only arguments Kraft offers regarding the named plaintiffs is to assert they are not credible because two of them have been disciplined for violation of company rules. Kraft Br. p. 32. But the credibility of the named plaintiffs is not a relevant consideration in assessing typicality under Rule 23(a)(3), and this discipline in no respect undermines their claims for donning and doffing and walking time, which are based upon the same legal theory applicable to other class members.

Accordingly, the typicality requirement is satisfied. See Musch v. Domtar Industries, Inc., Case No. 07-CV-5243-jcs (W.D. Wis., Jan. 30, 2008) (Kaplan Aff., Exh. 7, p. 34) (finding typicality requirement met in donning and doffing case under same Wisconsin laws because claims "arise out of same course of conduct, i.e., defendants pay policy and practice) as the other potential class members' claims"); De Asencio v. Tyson Foods, Inc., 2002 WL 1585580, *2 (E.D. Pa., 2002) ("Here, the Plaintiffs' claims are 'typical' because they, as well as all the production employees at the New Holland Facility, allege they are not paid

9

for the donning, doffing and cleaning of protective equipment which they are required to wear.")

### B. Plaintiffs and Their Counsel Are Adequate Representatives.

Kraft takes several cheap shots at the adequacy of the named plaintiffs and their counsel, all of which fall wide of the mark. Kraft's contention that UFCW Local 538, the union representing Kraft's employees at the Madison plant, "is in the driver's seat of this lawsuit" is both untrue and immaterial. Kraft Br. p. 33. Kathi Smith, on whose deposition testimony this claim is solely based initially testified that she believed Local 538 was responsible for making decisions in this lawsuit, but later acknowledged this testimony was speculative, that she was unaware of any role Local 538 played in prosecuting or financing this lawsuit, and that she would represent the overall interests of the class members in any settlement discussions, even if her views conflicted with Local 538's. Suppl. Kobelt Decl., Exh. 1, at 187-89. In fact, apart from financing the initial investigation of the viability of maintaining this action, Local 538 has played no role in the decision to file this action or in its prosecution or financing. Id. ¶ 7.

Moreover, even if Local 538 were involved in financing and controlling this lawsuit, it cannot be assumed that it is directing it or that its interests are antagonistic to those of the named Plaintiffs or class members. In Fox v. Tyson Foods, Inc., Case No. CV-99-BE-1612-M, dated February 1, 2002, a court summarily rejected similar arguments that the UFCW improperly influenced employees to join a donning and doffing lawsuit, explaining that the "UFCW's involvement in the initiation, funding and support of the lawsuit is beside the

10

point. The case was initiated by named employees of Tyson through private counsel. The fact the union cheers from the sidelines, or even provides active litigation support, through the Wilson Center, does not mean that the plaintiffs have improperly influenced, misled or coerced Tyson employees into joining this case." Id., Exh. 3, p. 11. See also Lewis v. National Football League, 146 F.R.D. 5, 10 (D.D.C., 1992) (rejecting claim that named plaintiffs in class action were "mere figureheads" of NFL players union because union funded the litigation); White v. National Football League, 822 F.Supp. 1389, 1404-05 (D. Minn., 1993) (rejecting claim that class counsel's loyalty to class was compromised by its representation of NFL player's union).

Kraft's argument that Local 538's interests are antagonistic to those of the plaintiff class because it bargained away a contractual requirement that employees be paid for clothes changing time during the 1980's and fears being sued by its members is equally absurd. Kraft Br. p. 33. Putting aside the expiration of the six months statute of limitations for commencing such duty of fair representation actions long ago, there is no legal authority whatsoever finding a union acts unlawfully by agreeing to delete negotiated language duplicating or exceeding legal requirements imposed by federal or state wage and hour laws. To the contrary, Local 538 has every interest in ensuring its members receive all wages and benefits to which they are entitled under the law.

Equally implausible is Kraft's contention that the UFCW has somehow misrepresented class members by filing this lawsuit because if similar charges were filed with the State of Wisconsin Department of Workforce Development ("DWD") and such charges were found meritorious, it would be possible for class

11

members to recover double damages, instead of 1.5 times the amount damages awarded which they would receive if they prevail in a private action under state law. Kraft Br. pp. 33-4. First, there is no evidence that Local 538 played any role in the decision to file this action, instead of administrative charges with the DWD. Further, Kraft ignores that the same double damages are recoverable under the FLSA, and that there are many advantages in pursuing a civil action with a jury trial and discovery not available if charges were filed with the DWD, which only result in an agency investigation with no recourse of no violations are found.

Likewise flawed are Kraft's claims that the named plaintiffs are too uninformed regarding the nature of this case to serve as class representatives. As the Seventh Circuit explained in Eggleston v. Chicago Journeymen Plumbers' Local Union 130, et. al., 657 F.2d 890, 896 (7th Cir., 1981), "[T]he class representative's role is limited. It was found not enough to defeat class certification in Surowitz v. Hilton Hotels Corp., 383 U.S. 363, 366 (1966), that the named plaintiff did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants." See also Carbajal v. Capital One, 219 F.R.D. 437, 441 (N.D. Ill., 2004) (named plaintiffs accepted because they "demonstrated adequate knowledge of the relevant facts and the basis for the claims, an understanding of the role of a class representative, and a commitment to fulfill that role" despite "lack of sophistication and relative unfamiliarity with the inner workings of federal civil litigation"); Longo v. Law Offices of Gerald E. Moore & Associates,

12

2006 WL 897800, *4-6 (N.D. Ill., 2006) (named plaintiffs "need only to have a marginal familiarity with the facts of her case and need not understand the larger legal theories on which her case is based")  Contrary to Kraft's implication, the named plaintiffs were each provided with a copy of the complaint at the time it was filed and a review of their depositions clearly indicates they are familiar with the relevant facts giving rise to the claims asserted here and are fully capable of fulfilling their fiduciary roles as class representatives.  Suppl. Kobelt Decl. ¶ 5, Exhs. 1, 2; Affidavit of Daniel Kaplan, Exhs. 1-4.

Kraft does not question class counsel's prior experience in serving as counsel in three certified class actions, but strains to argue that class counsel is inadequate because it sent improper notice to class members in the FLSA claims for the reasons it cites in its Motion to Strike.  Kraft Br. pp. 35-6.  Plaintiffs incorporate by reference their arguments made in their Opposition to this Motion that no improprieties have been committed.  Even if this Court disagrees, the inadvertent and technical violations alleged in no sense rise to the level of substantial breaches of fiduciary duties to the class warranting the extreme sanction of a denial of certification.  See Longo v. Law Offices of Gerald E. Moore & Associates, supra, at *5 (certifying class counsel despite firm's prior sanctions for abuses and unethical conduct).  The cases Kraft cites involve far more aggravated misconduct than that it alleges here.

### C. Common Issues of Fact and Law Predominate Over Individual Issues.

Kraft casts the specter of all defense counsel in class actions—that of conducting "mini-trials" for each class member to determine liability and

13

damages in support of its contention that the Rule 23(b)(3) criteria are met here. Kraft Br. p. 36. Kraft makes no effort to distinguish or criticize the four cases Plaintiffs cite in their Initial Brief (p. 10) rejecting these arguments and certifying similar state law wage and hour claims under Rule 23(b)(3); nor does Kraft seek to distinguish Judge Shabaz' recent certification of a Rule 23(b)(3) class in an identical donning and doffing case under the same provisions of state law relied upon here in Musch v. Domtar Industries, Inc., supra Kaplan Aff., Exh. 7, pp. 45-8. Kraft does not site any donning and doffing case in which class certification has been donned for this reason and Plaintiffs are unaware of any such authority.

Kraft is also oblivious to this Court's explication of the Rule 23(b)(3) requirements in Blihovde v. St. Croix County, supra. There, this Court certified a class despite recognizing the need to conduct an individualized inquiry regarding whether each individual class member was subjected to an unreasonable strip search prior to being incarcerated. This court found that a "single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions. (citation omitted) The basic question is 'whether proposed class are sufficiently cohesive to warrant adjudication by representation.'" Id. at 620 (citation omitted).

The proposed class here is far more cohesive than that at issue in Blihovde, and far fewer individualized inquiries will be required. There is no dispute that all class members are subject to the same policy of not being paid for time spent donning and doffing PPE and walking to and from their time clocks. Judge Shabaz agreed when he stated, "the core question of law concerning the [state law] claims, which is also a question common to class members, is whether time

14

spent donning and offing [PPE] as well as cleaning and sanitizing should be considered compensable work time.  If such time is compensable work time, then a question of fact common to all class members is whether defendant has paid class members for all their time spent working at defendant's paper mills as required under [state law]." Musch, at 46-47.

Contrary to Kraft, individualized inquiries will not be needed for each class member to determine the amount of time required for these activities.  Kraft Br. pp. 36-7. Plaintiffs intend to introduce expert testimony which will establish an average length of time class members spend donning and doffing each item of PPE and walking to and from their time clocks.  These calculations will be based upon numerous recorded observations of class members' activities and estimates of walking times based upon distances traveled, which take into account all of Kraft's purported differences in the manner by which individuals donn and doff PPE and walk to and from their time clocks.  Plaintiffs will know through discovery if certain class members do not work 40 hours in a given week and will not seek overtime payment under Counts I and IV for such class members, who will still claim the time as unpaid at regular pay rates.

Kraft's claims that individualized trials will need to be conducted to establish liability are therefore simply untrue.  The only individual questions will pertain to damages, and this Court has noted that, "the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification." Id. at 621.  This case is therefore manageable.

15

Likewise, Judge Shabaz paid no heed to Kraft's claim that filing a charge with the DWD is a superior method for pursuing the state law claims over a class action. Kraft Br. p. 38. Based upon his review of the state law, he found that the state law claims "closely mirror the FLSA claims already before this Court" and that "concentrating the litigation of the [state law] claims in this district would promote uniformity of decisions as to persons similarly situated." Musch, at 48. Plaintiffs are unaware of any decision finding that the mere existence of the option of filing hundreds of claims with an administrative agency renders class members' statutorily-sanctioned choice of litigation through a private class action not a superior method of litigation for purposes of Rule 23(b)(3). Class members are losing no rights under state law by initiating this civil action; to hold otherwise deprives them of their right to a jury trial and discovery.

## Conclusion

For the foregoing reasons, in addition to those previously stated, the FLSA action should be certified as a collective action, and the state law claims certified as a Rule 23(b)(3) class action.

Respectfully Submitted,

**LAWTON & CATES, S.C.**

By:   s/ Kurt C. Kobelt
Kurt C. Kobelt
SBN: 1019317
*Attorneys for Plaintiffs*
10 East Doty Street, Suite 400
Madison, WI 53703-2694
Telephone: (608) 282-6200
Facsimile: (608) 282-6252
Email:   kkobelt@lawtoncates.com

Dated:  March 21, 2008