IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFF SPOERLE, NICK LEE,
KATHI SMITH, JASON KNUDTSON,
on behalf of themselves and all others
who consent to become Plaintiffs and
similarly situated employees,

                     Plaintiffs,

        v.

KRAFT FOODS GLOBAL, INC.,
Oscar Mayer Foods Division,

                 Defendant.

OPINION AND ORDER

07-cv-300-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Plaintiffs are hourly employees at defendant Kraft Foods Global, Inc.'s meat processing plant in Madison, Wisconsin. Before they clock in for work, plaintiffs are required to put on several items of safety and sanitation equipment and then walk to their work stations where the time clock is located. The process is repeated in reverse after plaintiffs clock out. Plaintiffs contend that defendant's refusal to pay them for this time violates the Fair Labor Standards Act and Wisconsin law.

     Defendant filed an early motion for summary judgment, in which it argued that

1

donning and doffing the equipment was not compensable under the FLSA because those activities fall into several exceptions to the statute involving "preliminary" and "postliminary" activities, "changing clothes" and "de minimis" acts.   In addition, it contended that plaintiff's state law claims were preempted by federal law.   In an opinion and an order dated December 31, 2007, dkt. #25, I denied defendant's motion for summary judgment in most respects, concluding that its preemption arguments were unpersuasive and that it had not shown that it was entitled to judgment as a matter of law on plaintiff's FLSA claims.  Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860 (W.D. Wis. 2007).  I later denied defendant's motion for reconsideration, dkt. #33, and its request to file another motion for summary judgment, dkt. #113.

Now before the court are plaintiffs' motion for class certification, dkt. #34, and defendant's "motion to strike, for protective order, and for sanctions," dkt. #38.  Plaintiffs' motion has two parts.  With respect to their claims under the FLSA, plaintiffs seek certification of the case as collective action under 29 U.S.C. § 216(b); they seek class certification under Fed. R. Civ. P. 23(b)(3) for their state law claims.

The focal point of defendant's motion is plaintiffs' failure to obtain court approval or solicit input from defendant before sending out notices to potential class members and seeking their consent to participate in the lawsuit under § 216(b).  In addition, defendant says that the notice contained "scare tactics" and "blatant misrepresentations" that have

2

"tainted the collective action process."  Dkt. #39, at 1, 8.  Defendant asks the court to require that plaintiffs send out curative notices, to "bar the plaintiffs from further unsupervised contact with absent class members," id. at 14, and to sanction plaintiffs by requiring them to pay defendant's attorney fees and costs in bringing the motion.

Plaintiffs' motion will be granted.  This is an easy case for class certification: plaintiffs are challenging defendant's policy of refusing to pay hourly employees for certain activities; the class is limited to those employees who engage in those activities.  It makes sense to decide the lawfulness of that policy with respect to all employees in one case. Defendant has not identified any persuasive reasons why individual lawsuits would be a superior method to resolving the parties' dispute.

Defendant's motion will be granted with respect to its request to require plaintiff to send out new notices. Defendant is correct that the notices contain potentially misleading information about the rights of the employees.  However, the motion will be denied in all other respects.  The other sanctions defendant seeks are unnecessary and excessive.

From the affidavits submitted by the parties, I find the following facts to be undisputed for the purpose of deciding the parties' motions.


UNDISPUTED FACTS

A.  Defendant's Policy and Employee Practices Regarding Donning and Doffing

3

<u>Sanitation and Safety Equipment</u>

Defendant Kraft Foods, Inc. processes and manufactures meat products at its Oscar Mayer plant in Madison, Wisconsin.   Plaintiffs Jeff Spoerle, Nick Lee, Kathi Smith and Jason Knudtson are hourly employees of defendant at its Oscar Mayer Facility in Madison.

Currently, approximately 930 hourly employees work at the Oscar Mayer Facility. There are several hundred additional individuals who were formerly employed at the facility after May 30, 2004.  Approximately 1/3 of the hourly workforce works fewer than 40 hours in any given week and approximately 1/5 to 1/4 of the workforce works fewer than 35 hours in any give week.  The exact number of employees working fewer than 35 or 40 hours changes because of changes in schedules and production.

Production occurs on all nine floors of the Oscar Mayer facility.  There are 22 departments in which employees work and 27 time clocks available for use throughout these departments.  Hourly employees are paid from the time they "swipe in" to the time they "swipe out."

Defendant requires that all hourly employees wear certain company-provided items in the performance of their jobs: footwear (shoe rubbers, rubber boots or work boots), hair nets, beard nets (if applicable), protective headgear (hard hat or bump cap), polyester frocks, and ear plugs or ear muffs.   Maintenance personnel are also required to wear a cotton shirt. Some employees are required to wear safety glasses.

4

To retrieve any of these items, employees must go to the third floor of the Oscar Mayer facility.  Some employees store their items in lockers located in third floor locker rooms.  Some retrieve items from an area adjacent to the locker rooms, also on the third floor.  There are supply bins along the wall on the third floor, a short distance from the employee locker rooms, where hairnets and beard nets can be obtained.

Defendant requires that certain company-provided items be donned before swiping in and doffed after swiping out:  footwear (shoe rubbers, rubber boots, or work boots), hairnets, beard nets (if applicable), and a hard hat or bump cap.  These items are put on in the locker rooms.  Maintenance personnel are also required to put on a cotton shirt before swiping in.

The amount of time it takes an employee to don or doff these items may vary.  Some employees slip on their footwear, while others must tie them up.  It may take employees longer to change their shoes if they are chatting with a co-worker while changing or if physical conditions slow them down.

After employees don their required items on the third floor, they must go to their workstations to clock in.  The amount of time it takes to walk to the work station varies from employee to employee.  Employees are not paid for the time spent walking to and from their workstations.

B.  <u>Class Notice</u>

In early January 2008, the union provided plaintiffs' counsel with a list of current hourly employees.  Plaintiffs' counsel then sent a letter to the employees on the list in an attempt to obtain consents to join the pending lawsuit.  The letter stated:

**ADVERTISEMENT**

**RE:   <u>Spoerle, et. al. v. Kraft Foods Global, Inc.</u>**
**Case No. 07-C-0300-C**

Dear Oscar Mayer Employee:

This firm represents the Plaintiffs in the above lawsuit.

This lawsuit claims that Kraft Foods Global, Inc., Oscar Mayer Foods Division, is not paying employees who work at its Madison plant for time spent putting on and taking off personal protective equipment (sometimes referred to as "donning and doffing") in violation of Fair Labor Standards Act (FLSA) and state law.   The Plaintiffs seek to recover unpaid wages for all time spent donning and doffing.

On December 31, 2007, a federal judge denied Kraft's motion to dismiss the case. Trial is set for July 28, 2007.

The case was filed by Oscar Mayer employees Jeff Spoerle, Nick Lee, Kathi Smith, and Jason Knudtson on behalf of themselves and all others who consent to become plaintiffs.

Under the FLSA, if you wish to join into this lawsuit, you must sign the attached consent form and return it in the enclosed, self-addressed stamped envelope.

**If you do not sign the consent form, and the Plaintiffs win this case, you will not be eligible to recover any unpaid wages for time you spent donning and**

6

**doffing personal protective equipment.**

Please do not hesitate to call me with any questions you may have.

Accompanying the letter was a consent form, which stated:

### CONSENT TO JOIN SUIT AS PARTY PLAINTIFF

_____ states the following:
  (print name)
1. I am over 18 years of age and competent to give the following consent in this matter.

2. I am currently employed by Kraft Foods, Inc. At its Oscar Mayer Foods plant located in Madison, Wisconsin and have worked at this plant since _____.

3. I understand this suit is bring brought to recover from my employer compensation for pre and post-production time activities.  I also understand that the lawsuit will seek recovery for unpaid production time.  I understand that the suit is brought pursuant to both federal and state law.

4. I believe I have not been paid for all compensable time, which I have worked, including overtime.

5. I hereby consent and agree to be a Plaintiff herein and to be bound by any settlement of the case or adjudication by the Court.

I swear or affirm that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

As of the date plaintiff filed their motion for certification, 731 employees had executed

consent forms.

OPINION

A threshold question raised by defendant's response to plaintiff's motion for class certification is whether plaintiff's federal and state law claims may be maintained in the same lawsuit.  The question is not a jurisdictional one; defendant does not challenge an exercise of jurisdiction over the state law claims under 28 U.S.C. § 1367.  Rather, defendant's argument is now familiar in this district:  a plaintiff should not be allowed to maintain a representative action involving both federal and state law wage claims because of the procedural differences between the two types of claims.  The federal claims are governed by § 216(b), which requires each plaintiff to file a consent with the court to become part of the suit (plaintiffs must "opt in"); the state law claims are governed by Fed. R. Civ. P. 23, which makes each class member who receives notice a plaintiff unless he or she objects expressly (plaintiffs must "opt out").  Harkins v. Riverboat Services, Inc., 385 F.3d 1099, 1101 (7th Cir. 2004).  Thus, the argument is that potential plaintiffs will be hopelessly confused by the differences between the two claims and will be unable to make an intelligent decision regarding whether to opt in or out of the lawsuit.

The argument is familiar because it has been rejected by both judges in this district on the grounds that it makes little sense from the standpoint of judicial economy to require separate causes of action for two sets of nearly identical claims, that two lawsuits will not be any less confusing than one and that any potential confusion may be remedied by clearly

drafted notices.  Sjoblom v. Charter Communiucations, LLC, No. 07-cv-451-bbc, 2007 WL
4560541(W.D. Wis. Dec. 19, 2007); Musch v. Domtar Industries, Inc., No. 07-cv-524-jcs
(W.D. Wis. Jan, 31, 2008).  Defendant insists in what is becoming typical inflammatory
fashion that Sjoblom and Musch are distinguishable because hopeless confusion is now
unavoidable in this case: "Plaintiffs have assured us of this much with their coup d'etat of
the notice and consent process."  Dkt. #52, at 22.  In other words, because plaintiffs sent
out a notice prematurely that contained inaccurate information, no matter what happens
now, potential class members will not be able to rationally decide whether they want to be
part of the lawsuit.

Although I agree with defendant that plaintiffs made a foolish blunder, I do not agree
that it dooms the lawsuit, for reasons that I will discuss in the context of defendant's motion.
I adhere to the position I adopted in Sjoblom that plaintiffs may maintain federal and state
law wage claims in the same lawsuit.

I.  CERTIFICATION

A.  Necessity of Court Approval for Collective Actions under § 216(b)

Although § 216(b) does not explicitly require the district court to certify a collective
action under the FLSA, this court has concluded previously that the duty is implicit in the
statute and the Federal Rules of Civil Procedure. E.g., Sjoblom,  2007 WL 4560541, at *7;

9

<u>Austin v. CUNA Mut. Insurance Society</u>,  232 F.R.D. 601, 605 (W.D. Wis. 2006).  This conclusion is supported by the decisions of both the Supreme Court and the Court of Appeals for the Seventh Circuit, which have held that district courts have both the power and the duty to oversee collective actions generally as well as the notice process in particular. <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 170-171 (1989) (in action under § 216(b), "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way"); <u>Woods v. New York Life Insurance Co.</u>, 686 F.2d 578, 580 (7th Cir. 1982) (in action under § 216(b) district court has "duty . . . to regulate the content and distribution of the notice to potential class members").  In fact, I am not aware of any decision in which a court held that judicial approval of the collective action was not required.  <u>E.g.</u>, <u>Thiessen v. General Electric Capital Corp.</u>, 267 F.3d 1095, 1102-05 (10th Cir. 2001); <u>Hipp v. Liberty National Life Insurance Company</u>, 252 F.3d 1208, 1217-19 (11th Cir. 2001).

Plaintiffs suggest that court certification of the collective action may not be necessary when the plaintiffs do not seek approval for the notice, but it is difficult to see the logic in this position.  This court and others have not overseen the notice process simply as a courtesy to plaintiffs who wish to have court assistance.  Rather, it is part of the court's duty to insure fairness to *all* parties and to determine, as § 216(b) requires, whether potential class members are "similarly situated" to the named plaintiffs.  Thus, I agree with defendant that

court approval is required.

B. "Typicality" under Rule 23 and "Similarly Situated" under § 216(b)

With respect to plaintiffs' motion for class certification under Fed. R. Civ. P. 23, defendant does not challenge plaintiffs' contention that they meet three of the requirements for certification: the proposed class is ascertainable (all hourly employees not paid for donning and doffing protective equipment), it is sufficiently numerous (at least 1000 people); and each of the class member's claims shares a common question of law or fact (the issues that were raised in defendant's motion for summary judgment). Fed. R. Civ. P. 23(a)(1) and (2). Most of defendant's brief is devoted to opposing a finding that the named plaintiffs are similarly situated to other class members under § 216(b) and that the claims of the named plaintiffs are "typical" of the class's claims, as required by Fed. R. Civ. P. 23(a)(3). Because these inquiries overlap substantially, I will consider them together.

To begin with, it is somewhat ironic that defendant is now arguing that it is impossible to determine liability on a class wide basis. After all, it was defendant that moved for summary judgment before almost any discovery had been conducted, arguing that it was possible to resolve the entire case as a matter of law without regard to the differences between the plaintiffs. Defendant makes no effort to reconcile the apparent inconsistency of its views at different stages of the case.

11

In any event, defendant starts out wrong by arguing incorrectly that "plaintiffs bear the burden of establishing that there are no differences in practices and conduct that would have to be decided." Dkt. #52, at 30. The question is not whether the plaintiffs' claims are identical, it is whether "the named representatives' claims have the same essential characteristics as the claims of the class at large." De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). Further, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact." Id.

In arguing that plaintiffs' claims are not sufficiently similar or typical, defendant points to the "literally hundreds of differences," dkt. #52, at 2, among employees regarding the particular pieces of equipment they use, the distance the employees must walk and the amount of time it takes them to complete the process. A crucial element missing from defendant's lengthy argument is why any of these differences are relevant for the purpose of maintaining a class or a collective action.

In any class action for damages, no two parties will ever have exactly the same claim. If simply identifying difference between the parties were enough to defeat a motion for class certification, it would be impossible for any lawsuit to proceed as a class. Thus, the task of a court reviewing a motion for class certification is to decide whether any differences

12

identified are of the type that would make piecemeal litigation a superior vehicle for resolving each of the claims, or, to be more specific, whether the differences will make it impractical to resolve any significant issues regarding liability on a class wide basis. Mejdrech v. Met-Coil Systems Corp., 319 F.3d 910, 911 (7th Cir. 2003) ("[C]lass action treatment is appropriate and permitted by Rule 23 when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury.")

As I noted in the summary judgment opinion, the ultimate question in this case is straightforward:  does the law require defendant to pay its employees for donning and doffing safety equipment and for walking to and from their work stations?  In other words, the question is whether the defendant's policy of not paying its employees for these activities is unlawful.  When the plaintiffs are challenging a "uniform policy," class certification is likely to be appropriate because it is more efficient to determine the validity of that policy in the context of a single lawsuit.   Blihovde v. St. Croix County, Wisconsin, 219 F.R.D. 607, 620 (W.D. Wis. 2003) (citing cases).  Class cert2ification would be objectionable on the ground of atypicality only if it could be said that the lawfulness of defendant's policy were contingent on the differences it now identifies.

Defendant has not shown this to be the case. At summary judgment, defendant identified three issues that were relevant to a determination of liability:  (1) whether

13

donning, doffing and walking are not compensable because they are "preliminary to or postliminary to" the employee's "principal" work activities under 29 U.S.C. § 254; (2) whether donning and doffing the equipment falls within the meaning of "changing clothes" under 29 U.S.C. § 203(o); and (3) whether these activities are "de minimis" because they take such a short time to perform *and* are difficult to measure.  In the December 31 order, I concluded that defendant had failed to show that *any* of the activities involved was "preliminary" or "postliminary," that *any* of the items were "clothes" under §203(o) or that the activities were de minimis within the meaning of the judicial exception in  Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 691 (1946).

Although defendant now says that it has "individualized defenses" with respect to these issues, it does not develop any meaningful argument that there are significant differences among the class members about the way the issues would be resolved.  For example, defendant does not suggest that some potential class members have de minimis claims and some do not or that activities of some potential class members are "preliminary" and "postliminary" and some are not.  Rather, defendant's argument does little more than express its continuing disagreement with this court's legal conclusions in the December 31 order regarding the meaning of "preliminary," "postliminary," "clothes" and "de minimis."

Defendant is certainly correct that individual questions remain regarding the amount of equipment a particular employee wears, how long it takes the employee to put the

14

equipment on and walk to his or her work station and whether a particular employee worked at least 40 hours (which would determine whether the time donning and doffing qualified for overtime pay). But these are not questions of liability, they are questions of damages, and "the cases are legion in which courts have rejected arguments that differences in damages among the class members should preclude class certification." Blihovde, 219 F.R.D. at 621.

The only other argument advanced by defendant is that the named plaintiffs "are subject to credibility challenges," dkt. #52, at 32, but the same could be said of any witness, so it is difficult to see how that could be a barrier to class certification.

Defendant does not even try to distinguish any of the other cases in which courts have certified a class action or collective action involving employees seeking compensation for donning and doffing safety equipment, including Musch,07-cv-524-jcs, a recent case decided by Judge Shabaz only a few months ago. See also Ballaris v. Wacker Siltronic Corp., 370 F.3d 901, 906 -07 (9th Cir. 2004); De Asencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003); Nelson v. American Standard, Inc., No. 2:07-CV-010. 2008 WL 906324, *2 (E.D. Tex. Mar. 31, 2008); Jordan v. IBP, Inc., – F. Supp. 2d. – , 2008 WL 943592, *18 (M.D. Tenn. Mar. 31, 2008); Owens v. Southern Hens, Inc., Civil Action No. 2:07cv28-KS-MTP, 2008 WL 723923, *5 (S.D. Miss. 2008); Lugo v. Farmer's Pride Inc., Civil Action No. 07-cv-00749, 2008 WL 638237, *3 (E.D. Pa. Mar. 8, 2008); Lopez v. Sam Kane Beef Processors, Inc., 2008 WL 565115, *2  (S.D. Tex. Feb. 29, 2008); Trotter v.

15

Perdue Farms, Inc., No. CIV.A.99-893-RRM  2001 WL 1002448, *2  (D. Del. Aug. 16, 2001).  Defendant cites no cases that have gone the other way.  (In my own research, I discovered one case, Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1302 (11th Cir. 2008), that affirmed the denial of class certification, but that case is not instructive because the district court found that the defendant did not have a consistent policy regarding whether employees should be paid for donning and doffing protective equipment. In this case, it is undisputed that defendant's policy is the same with respect to all employees at the facility.)

Accordingly, I find that the named plaintiffs are similarly situated to potential class members under § 216(b) and that plaintiffs' claims are typical of the class under Rule 23. For similar reasons, I conclude that plaintiff has met the requirement of Rule 23(b)(3) to show that "questions of law or fact common to members of the class predominate over any questions affecting only individual members."  Blihovde, 219 F.R.D. 607 at 620 ("[W]hen the class is challenging a uniform policy, the validity of that policy predominates over individual issues and class certification is appropriate.").  Further, "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," Fed. R. Civ. P. 23(b)(3), because it will allow the parties to resolve many issues in one lawsuit and because the potential individual damage awards are likely too small to provide an incentive for any one employee to pursue the claim on his own.

16

## C. Adequacy of Representation

The last question with respect to plaintiff's motion is whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is directed at protecting the due process rights of absent class members, who will be bound by any judgment that plaintiffs obtain. Hansberry v. Lee, 311 U.S. 32 (1940). Thus, a court's primary inquiry under this provision is whether there are "conflicts of interest between named parties and the class they seek to represent," Amchem Products, Inc. v. Windsor, 521 U.S. 591, 625-626 (1997), but "the competency and conflicts of class counsel" are relevant as well, id. at 626 n.20. See also Culver v. City of Milwaukee, 277 F.3d 908, 913 (7th Cir. 2002) ("For purposes of determining whether the class representative is an adequate representative of the members of the class, the performance of the class lawyer is inseparable from that of the class representative.")

Defendant advances a number of arguments with respect to this requirement, but none has merit. First is its speculative belief that a conflict exists because the union is controlling the litigation. In support of this belief, defendant cites one statement from a deposition in which one of the named plaintiffs answered "Yes" to a question whether she "think[s]" the union is responsible for making "those decisions" with the advice of counsel. Dkt. #52, at 33. (Defendant provided no elaboration as to what "those decisions" are.) Even if the union were involved, defendant identifies no reason why that would create any

17

conflict between the class members, except that it suggests that the union could be vulnerable to a claim of unfair representation if plaintiffs prevail in this lawsuit. Aside from again being completely speculative, this argument is internally inconsistent: it accuses the union of initiating a lawsuit for the sole purpose of running it to the ground.

Next, defendant brings up plaintiffs' premature class notice as proof that plaintiffs' counsel are incompetent and unable to adequately represent the class. As I noted above, I agree with defendant that counsel's actions were a mistake and not an insignificant one. But this is a far cry from a showing that allowing counsel to proceed would result in a deprivation of due process to absent class members. The conduct of the lawyers in the three cases cited by defendant was far more serious than counsel in this case. Wagner v. Lehman Bros. Kuhn Loeb Inc., 646 F. Supp. 643, 661 (N.D. Ill.1986) (finding counsel inadequate when they had misled class members, stated that they "care[d] nothing about" the lawsuit and violated ethical rules); Taub v. Glickman, 67 Civ. 3447, 1970 WL 210 (S.D.N.Y. Dec. 1, 1970) (finding counsel inadequate when they waited three years to file motion for class certification, failed to attend court hearings and failed to file responses to motions); Korn v. Franchard Corp., 67 Civ. 3445, 1970 WL 3481, 1 (Oct. 22, 1970) (in case involving same lawyers as those in Taub, finding counsel inadequate because they had used names and addresses provided by court for "improper purposes" such as "stirring up litigation"). In most matters in this lawsuit, counsel for plaintiffs have demonstrated that they are able

18

lawyers, having successfully defeated defendant's motion for summary judgment and other motions.  They have significant experience in labor and employment law and in litigating class actions.  Dkt. #36, Aff. of Kobelt (plaintiff's lead counsel has 28 years experience in labor and employment law and has handled six class actions).  One mistake is not enough to doom the entire lawsuit.

Finally, defendant argues that the named plaintiffs themselves are not adequate because they are not sufficiently involved in the litigation.  In support of this argument, defendant says that the named plaintiffs have not received all of the filings in the case.  Dkt. #52, at 34.  Although it is true that a number of courts have inferred a limited duty by the named plaintiffs to maintain control of the litigation, e.g., Welling v. Alexy, 155 F.R.D. 654, 659 (N.D. Cal. 1994); Gill v. Monroe County Dept. of Social Services, 92 F.R.D. 14 (W.D.N.Y. 1918), the Court of Appeals for the Seventh Circuit has given short shrift to it for the same reason that it has held that the adequacy requirements of Rule 23 extend to class counsel: for purposes of Rule 23(a)(4), the named plaintiffs and class counsel are one unit.  The court explained:

> [E]ven when the class representative has some stake . . .  it is usually very small in relation to the stakes of the class as a whole, magnifying the role of the class lawyer and making him (or in this case her) realistically a principal. Indeed *the* principal. . . . Realistically, functionally, practically, [class counsel] is the class representative, not [the named plaintiff]. Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge

19

knows that any statements to the contrary [are] sheer sophistry.

<u>Culver</u>, 277 F.3d at 913 (citations and internal quotations omitted).  <u>See also</u> <u>Grasty v.</u>
<u>Amalgamated Clothing and Textile Workers Union, AFL-CIO, CLC</u>, 828 F.2d 123, 129 (3d
Cir. 1987) (class representatives' obligation to vigorously prosecute case is met by hiring
qualified class counsel).  In other words, so long as class counsel is protecting the interests
of the class, extensive oversight by the named plaintiffs is not necessary.  As noted above,
counsel's representation has not been flawless, but it is at the very least adequate.  I cannot
conclude that the named plaintiffs' failure to receive and review every filing in the case
prevents the lawsuit from proceeding as a class.

In sum, I conclude that plaintiffs have satisfied the requirements of § 216(b) and Rule
23.  In accordance with Rule 23(c)(1)(B), I will certify the following class proposed by
plaintiffs (a definition that defendant does not oppose): "All current and former hourly
employees employed at Kraft Foods Global, Inc.'s Oscar Mayer Foods Division Madison,
Wisconsin plant since May 30, 2004 who were not paid regular or overtime pay for time
spent donning and doffing personal protective equipment and walking to and from their
work stations."  I will discuss the proper notice procedures in the context of defendant's
motion.

## II.  DEFENDANT'S MOTION TO STRIKE

20

Plaintiffs concede that they erred in failing to seek defendant's input before sending out class notices.  <u>Woods</u>, 686 F.2d at 580 (stating that it would not be "proper" for plaintiffs to send out class notices "without first communicating to the defendant's counsel his intention to do so, so that the defendant's counsel would have an opportunity to verify the accuracy of the notice and, if he wished, to move for an order amending the notice or limiting its distribution in an appropriate manner").  In addition, I agree with defendant that the notice included unfortunate language that could be interpreted as suggesting that employees must join the class if they wish to be awarded damages for lost wages. ("If you do not sign the consent form, and the Plaintiffs win this case, you will not be eligible to recover any unpaid wages for time you spent donning and doffing personal protective equipment.") The notice should have been clearer that employees were free to file their own individual lawsuits.  The question is what to do about this mistake now.

I agree with defendant that plaintiffs must send curative notices and obtain new consents, but I do not agree that further sanctions are necessary.  Defendant's suggestion that plaintiffs' counsel be barred from having unsupervised contact with the class is overzealous advocacy.  Defendant has not shown that counsel's actions were anything other than an isolated blunder. It has pointed to no decisions in which a court has taken the extreme step of barring communication under similar circumstances.  The request for a sanction of attorney fees is more reasonable, but it too goes further than necessary.  A

21

requirement to send out new curative notices and obtain new consents is a significant sanction in itself.  Defendant has brought enough of its own motions of questionable merit, requiring plaintiffs to expend resources unnecessarily when filing a response.  Dkt. #33 (denying defendant's motion for reconsideration); dkt. #113 (denying motion to file second motion for summary judgment). This is reason enough to hesitate before awarding fees when the tables have turned.

Accordingly, defendant's motion will be granted insofar as it seeks to require plaintiffs to send out new notices that (1) correct the deficiencies of the first notice and (2) incorporate information related to the state law claims.  The motion will be denied in all other respects.

Plaintiffs may have until May 16, 2008 in which to submit a proposed notice to defendant.  By May 23, 2008, the parties must file a joint agreed notice with the court, or, if they cannot agree, plaintiff should file and serve its proposed notice and defendant should submit its objections (defendant should provide the grounds for its objections in advance of May 23 so that plaintiffs may address them when they submit their proposed notice).

## ORDER

IT IS ORDERED that

1.  Plaintiffs' motion for certification of a collective action under 29 U.S.C. § 216(b)

with respect to their federal law claims and a class action under Fed. R. Civ. P. 23 with respect to their state law claims, dkt. #34, is GRANTED.

    3.   Defendant Kraft Global Foods, Inc.'s motion to file a reply brief in support of its motion to strike, dkt. #48, is GRANTED; plaintiffs' motion to withdraw its motion to strike defendant's reply brief, dkt. #101, is GRANTED; plaintiff's motion to strike the reply brief, dkt. #46, is DENIED as moot.

    3.   Defendant's "motion to strike, for protective order, and for sanctions," dkt. #38, is GRANTED with respect to defendant's request to require plaintiffs to send out curative notices and obtain new consents.  The motion is DENIED in all other respects.

    4.   Plaintiffs may have until May 16, 2008 in which to submit a proposed notice to defendant.  By May 23, 2008, the parties must file a  joint agreed notice, or, if they cannot agree, plaintiff should submit its proposed notice and defendant should submit its objections to that notice.

    Entered this 5th day of May, 2008.

                    BY THE COURT:

                    /s/

                    _____

                    BARBARA B. CRABB
                    District Judge