IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFF SPOERLE, NICK LEE,
KATHI SMITH, JASON KNUDTSON,
on behalf of themselves and all others
who consent to become Plaintiffs and
similarly situated employees,

                                Plaintiffs,

          v.

KRAFT FOODS GLOBAL, INC.,
Oscar Mayer Foods Division,

                         Defendant.

OPINION and ORDER

07-cv-300-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiffs Jeff Spoerle, Nick Lee, Kathi Smith and Jason Knudtson brought this combined collective action under the federal Fair Labor Standards Act and class action under state law, contending that hourly employees at the Oscar Mayer plant in Madison, Wisconsin should be paid for the time spent donning and doffing a number of safety and sanitation articles and walking to and from their work stations at the beginning and end of their shifts.  In its original motion for summary judgment, defendant Kraft Foods Global, Inc. argued that federal law does not require compensation because these activities fall within

1

several exceptions to the FLSA definition of "work" involving "preliminary" and "postliminary" activities, "changing clothes" and "de minimis" acts.  In addition, it argued that any Wisconsin laws requiring payment were preempted under several different theories. In an order dated December 31, 2007, I denied defendant's motion because it failed to show as a matter of law that any of the exceptions applied or that federal law preempted state law. Spoerle v. Kraft Foods Global, Inc., 527 F. Supp. 2d 860 (W.D. Wis. 2007).

Just before the trial was scheduled to begin in July 2008, the parties came to a "settlement" of sorts.  Under their agreement, plaintiffs limited the scope of their claims to seeking compensation for time spent the last two years walking between the locker room and work stations and donning and doffing the following items:  captive footwear (boots or shoe rubbers), head gear (hard hats or bump caps), hairnets, beard nets and frocks or career clothing.   For its part, defendant withdrew all but two of its defenses: (1) donning and doffing the items at issue falls within the "changing clothes" exception to compensable work under 29 U.S.C. § 203(*o*); and (2) plaintiffs' state law claims are preempted by federal law.  The parties submitted a stipulation of facts and agreed to a formula for calculating damages in the event that plaintiffs prevailed on liability.  Dkt. ## 242, 274.

Now before the court are the parties' cross motions for summary judgment, as anticipated by the agreement.  Although Pirant v. United States Postal Service, 542 F.3d 202, 208-09 (7th Cir. 2008), muddies the waters somewhat with respect to the scope of

2

plaintiffs' rights under the FLSA, I conclude that § 203(*o*) does not preempt more generous state laws even if the articles at issue in this case are "clothes" within the meaning of § 203(*o*). Because the parties agree that state law *does* require defendant to pay plaintiffs for donning and doffing these articles and that plaintiffs are entitled to full relief under the settlement if they are successful on their federal law claims *or* their state law claims, it is unnecessary to determine whether plaintiffs are entitled to prevail under the FLSA. Judgment will be entered in favor of plaintiffs.

The following facts are taken from the parties' joint stipulation of facts. Dkt. #240.

## UNDISPUTED FACTS

Defendant Kraft Foods Global, Inc. operates a meat processing plant in Madison, Wisconsin through its Oscar Mayer Foods division. Plaintiffs are current or former employees at the Madison plant. (782 employees have filed consents to join the suit under the FLSA; three members of the class have opted out of the state law claims.)

Federal law and defendant's policies require employees to don a number of articles for purposes of safety and sanitation. Defendant requires plaintiffs to don and doff some of these articles without being paid for doing so, that is, before the beginning of their shift and after the end of their shift. These articles include: captive footwear (shoe rubbers, over-the-calf rubber boots, or work boots), hairnets, beard nets (if an employee has a beard),

3

hard hats or bump caps, frocks or career clothing (shirt, pants and jacket).  The footwear and career clothing generally are worn in place of plaintiffs' own clothes; the frocks are worn over those clothes.

Plaintiffs are not permitted to remove any of the articles from the plant.  The articles are stored in or near the locker room.  Plaintiffs may don the articles there or on their way to the production area, where the time clock is.  The process is reversed at the end of the shift; after plaintiffs clock out, they may remove the articles and return them to the area they are stored.  Depending on each plaintiff's department, it takes between five and twelve minutes to don and doff these articles and walk to and from the locker room and production area.

Since 1985, defendant has not paid its employees for donning and doffing these articles, pursuant to the collective bargaining agreement between defendant and plaintiffs' union.

OPINION

The focus of the parties' remaining disputes is the proper scope of 29 U.S.C. § 203(*o*):

Hours Worked.—In determining for the purposes of sections 206 and 207 of this title the hours for which an employee is employed, there shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective-bargaining agreement

4

applicable to the particular employee.

As now constituted, the case raises two questions: (1) are the articles that plaintiffs are required to don and doff exempt from the requirements of the FLSA because they are "clothes" within the meaning of 29 U.S.C. § 203(*o*); and (2) if they are exempt, does § 203(*o*) preempt Wisconsin law that does not contain an exception for "changing clothes"? (I do not address the issue that some courts have, e.g., Figas v. Horsehead Corp., 2008 WL 4170043, *6 (W.D. Pa. Sept. 3, 2008), which is whether the donning and doffing of the articles qualifies as "changing" within the meaning of § 203(*o*), because the parties do not raise it.)

With respect to the question under § 203(*o*), in the December 31, 2007 order, I rejected the "I know it when I see it" approach to defining the term "clothes" advanced by defendant.  In the cases defendant relied on at summary judgment, courts had concluded that certain articles used for safety and sanitation were "clothes" without explaining why or providing a definition of the term.  E.g., Anderson v. Cagle's, Inc., 488 F.3d 945, 955-56 (11th Cir. 2007); Bejil v. Ethicon, Inc., 269 F.3d 477, 480 n. 3 (5th Cir. 2001); Kassa v. Kerry, Inc., 487 F. Supp. 2d 1063, 1067 (D. Minn. 2007).  Instead, I followed the lead of the court in Fox v. Tyson Foods, Inc., No. CV-99-BE-1612-M, 2002 WL 32987224, *11 (N.D. Ala. Feb.4, 2002), in which the court had noted that "changing clothes" is "an everyday, plain-language term that describes what most people do every day—taking off

5

pajamas to put on work clothes in the morning, or taking off dress clothes to put on casual wear in the evening."   Under "[t]his view, the relevant questions [are] straight forward: Is the article something the employee would normally wear anyway (or does it replace such clothing)? Or is it something the employee wears in addition to those clothes and is required to do so for a job-related reason?"  Spoerle, 527 F. Supp. 2d at 867.  See also Hoyt v. Ellsworth Co-op. Creamery, 579 F. Supp. 2d 1132, 1137 (W.D. Wis. 2008) (Shabaz, J.) (adopting same definition); Perez v. Mountaire Farms, Inc., No. CIV. AMD 06-121, 2008 WL 2389798, *3 (D. Md. June 10, 2008) (same).  Because the parties had adduced little evidence regarding the nature and purpose of the articles at issue, I concluded that defendant had failed to show as a matter of law that the articles met this standard.

Without saying so explicitly, defendant is seeking reconsideration of the summary judgment order by asking for a new interpretation of § 203(*o*).  In particular, defendant argues that the meaning of "changing clothes" should be governed by the collective bargaining agreement so long as that agreement is "bona fide."  Not surprisingly, defendant believes that the standard is met in this case and that the court should give "deference" to the collective bargaining agreement, which does not require compensation for donning and doffing the articles in dispute.

Defendant's position has some surface appeal.  From the courts' perspective, it could eliminate the task of construing an ambiguous statutory term.  From the employers' and

6

employees' perspectives, it could provide greater certainty over the scope of their respective rights and obligations because one need only consult the collective bargaining agreement to determine whether donning and doffing particular items is a compensable activity.

A closer view of defendant's proposal reveals serious flaws. For one thing, it collapses a two-part question under the statute into a single inquiry. Under § 203(*o*), donning and doffing particular articles may be excluded from an employee's "hours worked" if two conditions are met: (1) the activity is excluded from compensation "by the express terms of or by custom or practice under a bona fide collective-bargaining agreement"; *and* (2) the activity constitutes "changing clothes." Figas, 2008 WL 4170043, at *6 ("Inherent in this defense [under § 203(*o*)] are two separate elements"). Under defendant's view, once it is determined that the act of donning and doffing particular articles is not protected by the collective bargaining agreement, the analysis is complete. In other words, if the collective bargaining agreement does not require compensation for donning and doffing, it necessarily means that the articles are "clothes" within the meaning of § 203(*o*).

The problem with this view is that Congress gave no hint in the statute that the task of interpreting § 203(*o*) should be relegated to employers or unions. Ordinarily, questions of statutory construction are the province of the judiciary. United States v. American Trucking Ass'ns, 310 U.S. 534, 544 (1940) ("The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function."). Defendant fails

7

to point to even one other example in which private parties have binding authority to construe a statute, or, as defendant suggests even more boldly, in which the meaning of a word in a statute can *vary* from case to case, depending on the individualized interpretation in a collective bargaining agreement.  By their nature, statutes are meant to create rules of conduct that govern everyone the same.  I would not depart from this basic principle of law without strong evidence of congressional intent, evidence that defendant has failed to provide.

Perhaps realizing the problems its approach poses, defendant puts a qualifier on it, saying that courts may provide their own definition when the one in the collective bargaining agreement is "patently unreasonable" or otherwise unfair.  Dft.'s Br., at 2, dkt. #277.  This qualifier seems to be an attempt by defendant to align itself with those courts that have distinguished "specialized protective gear" from "non-unique protective gear," concluding that the latter qualifies as "clothes" under § 203(*o*) but the former does not.  E.g., Anderson, 488 F.3d at 955-56; Alvarez v. IPB, Inc., 339 F.3d 894 (9th Cir. 2003); Kassa, 487 F. Supp. 2d at 1067.  Defendant says that the approach in these cases is consistent with its own because items that are "extensive, unique and burdensome to don and doff . . . are far less likely to fit into any good faith, shared definition of 'clothes.'" Dft.'s Br. at 21, dkt. #277.

Once defendant qualifies its position in this way, any practical benefits it might have disappear.  Defendant argues that a problem with this court's interpretation of § 203(*o*) is

8

that it "leaves so many open questions only resolvable on a case-by-case basis." Dft.'s Br., at 17, dkt. #277. To the extent this is true, defendant's approach does not solve that problem. Instead of arguing over whether an article is something an employee would wear anyway, parties employing defendant's proposed standard would argue over whether articles are sufficiently "extensive, unique and burdensome," which are far from self defining terms. Thus, adopting defendant's view would not eliminate the need for the difficult line drawing that defendant criticizes; it would simply move the line in a direction that favors the employer. More important, the distinction defendant would make between "burdensome" or "unique" articles and any other safety or sanitation equipment has no basis in the statute or in the ordinary meaning of clothes. Thus, defendant's view would return courts to the "I know it when I see it" approach I rejected in the summary judgment order.

Although I do not find defendant's view of § 203(*o*) persuasive, I agree that the law in this circuit is not the blank slate it was at the time of the summary judgment order. In Pirant v. United States Postal Service, 542 F.3d 202, 208-09 (7th Cir. 2008), the court considered whether, under the Family Medical Leave Act, the time spent by a postal service employee donning and doffing "gloves, shoes and [a] work shirt" was work time that could be counted toward qualifying under the Act. After noting that the FMLA is governed by the same standards as the FLSA, the court cited Steiner v. Mitchell, 350 U.S. 247, 256 (1956), for the proposition that "changing clothes" is a noncompensable "preliminary" or

9

"postliminary" act under 29 U.S.C. § 254(a) of the FLSA unless "those activities are an integral and indispensable part of the principal activities for which covered workmen are employed." Finally, the court concluded that the plaintiff's donning and doffing was not compensable because she "was not required to wear extensive and unique protective equipment." Pirant, 542 F.3d at 209.

I agree with plaintiffs that Pirant is distinguishable from this case in a number of ways. Most notable, the court was not applying § 203(o), but rather the FLSA exception under § 254(a) regarding "preliminary" and "postliminary" activities, which is no longer at issue in this case. (Originally, defendant raised a defense under § 254(a), but withdrew it as part of the settlement.) In addition, the articles at issue in this case are different from the articles in Pirant, which were simply a uniform and thus would fall under any definition of "clothes." Spoerle, 527 F. Supp. 2d at 867 ("Under this [court's] understanding of 'changing clothes,' putting on a uniform would not be covered under the FLSA under ordinary circumstances, but donning and doffing equipment used to protect against hazards particular to the workplace would be covered.")

Although Pirant is not on all fours with this case, it cannot be set aside as easily as plaintiffs suggest. The analysis under § 254(a) is closely related to the one under § 203(o) in the context of donning and doffing, particularly in light of this court's summary judgment order. Both require a court to examine the nature and purpose of the article. If an article

10

is not "integral and indispensable" under <u>Steiner</u> for safety or other job-related reasons, this makes it more difficult to argue that the article is protective equipment rather than clothes under § 203(*o*).  <u>E.g.</u>, <u>Figas</u>, 2008 WL 4170043, at *18 (discussing interaction of § 203(*o*) and § 254(a)).  Further, even though the articles at issue in <u>Pirant</u> were different from those in this case, the standard suggested by the court goes beyond the particular facts of the case.  In concluding that the donning and doffing was not compensable, the court noted that the articles were not "extensive and unique protective equipment."  <u>Pirant</u>, 542 F.3d at 209.  Although the court did not cite any cases for this approach, it is evocative of the approach I rejected from cases like <u>Anderson</u> and <u>Kassa</u>.  If that standard were applied to the articles in this case, it is unlikely that plaintiffs could meet it.

<u>Pirant</u> is not the only potential problem for plaintiffs.  In the summary judgment order, I rejected defendant's argument under § 203(*o*) in part because defendant had proposed so few facts about the articles that it was impossible to tell whether or not they were "clothes" under this court's interpretation of that term.  Now, however, the facts show that some of the articles at issue are worn as replacements for clothes that plaintiffs would wear anyway, which is a key part of this court's definition.

Although <u>Pirant</u> may leave the state of federal law in this circuit unclear and the facts in this case may cast some doubt on plaintiffs' ability to meet the standard under § 203(*o*) set forth in the summary judgment order, I need not resolve these questions.  The parties

11

agree that plaintiffs are entitled to full relief under the terms of the settlement if they succeed on their federal law claims under the FLSA *or* their state law claims under Wis. Stat. §§ 109.03 and 103.02.  Under their settlement, the parties agree that Wisconsin law requires compensation for donning and doffing the items at issue because it does not include a counterpart to § 203(*o*).  Defendant raises no defenses related to the scope of state law.  The only defense it raises is that the state laws are unenforceable because they are preempted by federal law.  Thus, unless defendant is right about preemption, plaintiffs win.  Because I conclude that defendant is wrong on this issue, I will enter judgment in favor of plaintiffs.

Defendant's theory of preemption is that § 203(*o*) conflicts with any claims under state law that would require it to compensate plaintiffs for donning and doffing the articles at issue in this case. (I will assume for the purpose of considering defendant's preemption arguments that the articles are "clothes" within the meaning of § 203(*o*).)   Under a theory of conflict preemption like the one defendant asserts, the standard is a relatively general one, which is "whether state law differs from federal law in such a way that achievement of the congressional objective is frustrated." Aux Sable Liquid Products v. Murphy, 526 F.3d 1028, 1034 (7th Cir. 2008) (internal quotations and alterations omitted).

Defendant identifies three other types of preemption under  § 301 of the Labor Relations Management Act and under the theories set forth in San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), and Lodge 76, International Associationn of

12

Machinists and Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Commission, 427 U.S. 132 (1976), but it does not develop any argument with respect to these theories.  Although defendant says it does not intend to waive those arguments, that is exactly what it has done by failing to develop them.  E.g., General Auto Service Station v. City of Chicago, 526 F.3d 991, 1006 (7th Cir. 2008); Pruitt v. City of Chicago, Illinois, 472 F.3d 925, 930 (7th Cir. 2006).

In attempting to show that § 203(o) preempts more generous state laws, defendant faces an uphill battle.  Any preemption analysis begins with two basic principles: the intent of Congress always controls and the presumption is that Congress does not wish to interfere with the state's power to provide for the welfare of its people.  Wyeth v. Levine, 129 S. Ct. 1187, 1194-95 (2009).  "That assumption applies with particular force when Congress has legislated in a field traditionally occupied by the States," Altria Group, Inc. v. Good, 129 S. Ct. 538, 543 (2008), such as labor law.  Anderson v. Sara Lee Corp., 508 F.3d 181, 193 (4th Cir. 2007) ("There is a strong presumption that Congress, in enacting the FLSA for the benefit of workers, did not intend to override the States' traditional role in protecting the health and safety of their citizens.").  A party arguing that federal law preempts a state law must show that was "the clear and manifest purpose of Congress."  Wyeth, 129 S. Ct. at 1195.

Defendant's burden becomes even heavier when one considers that the general

13

purpose of the FLSA is to prevent "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a).  Defendant could not argue successfully that such a purpose is frustrated by a statute that seeks to insure full compensation to employees for all of the work that they do.

Perhaps defendant's biggest obstacle is the express savings clause that Congress included in the FLSA.  Under 29 U.S.C. § 218(a), "No provision of this chapter . . . shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum workweek established under this chapter."

Defendant attempts to avoid the effect of § 218(a) with a single sentence in its opening brief in which it states that "[t]he right to remove compensation for clothes changing from the collective bargaining table is noticeably absent from this clause."  Dft.'s Br., at 33, dkt. #277.  This is reading § 218(a) and § 203(*o*) too narrowly.  The question under § 218(a) is not whether a particular activity is expressly enumerated under the statute, but whether the state law can be described as setting a higher minimum wage or lower maximum work week than federal law.

The state law provisions at issue in this case, Wis. Stat. §§ 103.02 and 109.03 (and the implementing regulations in Wis. Admin. Code Chs. 272 and 274), are wage and hour

laws.  Section 103.02 governs the maximum number of hours employees may be required to work without being paid overtime; section 109.03 governs the payment of wages. Section 203(*o*) is simply a method for calculating "hours worked" in the context of §§ 206 and 207 of the FLSA, which are the federal analogs to §§ 103.02 and 109.03.  Mueller v. Thompson, 133 F.3d 1063, 1064 (7th Cir. 1998) (noting substantial overlap between FLSA and Wis. Stat. §§ 109.03 and 103.02).  In particular, section 203(*o*) defines "[h]ours [w]orked . . . for the purposes of sections 206 and 207" so that "time spent in changing clothes" is "excluded" from the calculation if that issue has been addressed by a collective bargaining agreement. Thus, § 203(*o*) sets a higher "maximum work week" than Wisconsin law under some circumstances because it excludes certain activities from the calculation that would otherwise qualify as "work" under both state and federal law, namely, changing clothes. DeKeyser v. Thyssenkrupp Waupaca, Inc., 589 F. Supp. 2d 1026, 1031 (E.D. Wis. 2008) ("[T]he FLSA would preempt only state laws that mandated lower minimum wages or longer maximum workweeks. Since the parties agree that the Wisconsin wage and hour laws, Wis. Stat. chs. 103 and 104 and §§ 109.01-109.11, are not less generous than those of the FLSA, it seems clear that the FLSA does not displace the state law.")

Despite the savings clause, defendant argues that § 203(*o*) is different from other "minimum" and "maximum" laws because § 203(*o*) says that time spent changing clothes "shall be excluded" from the hours worked.  According to defendant, unless Wisconsin law

is preempted, the standard becomes "shall be *included*," a difference that creates "a direct conflict between federal and state law." Dkt. #277, at 31.

At first look, defendant's argument seems perfectly logical. After all, "include" is the opposite of "exclude," so it would seem that any statute that requires one must conflict with a statute that requires the other. Upon closer inspection, however, the flaws in defendant's logic are revealed. To begin with, Wisconsin law does *not* require employers to pay wages for "changing clothes" in all instances, only when doing so constitutes "work." E.g., Wis. Admin. Code §§ DWD 272.12 and 274.03. Thus, the "shall be excluded" versus "shall be included" dichotomy defendant attempts to create is misleading.

Further, the same "conflict" could be identified with respect to almost any state law that provides more generous benefits to employees. For example, one could read the federal minimum wage law as saying that "employers *shall not* be required by law to pay employees more than $6.55 an hour," 29 U.S.C. § 206(a)(1), and the Wisconsin law as saying "employers *are* required by law to pay employees more than $6.55 an hour." Wis. Admin. Code § DWD 272.03. Any difference between state and federal law may be characterized as a conflict.

All the difference between federal and state law shows is that Wisconsin law gives workers more rights than they would be entitled to under federal law, something that is permissible as a general matter. English v. General Electric Co., 496 U.S. 72, 89 (1990)

16

("[O]rdinarily, state causes of action are not pre-empted solely because they impose liability over and above that authorized by federal law.")   Defendant says that doing so is impermissible in this case because the intent of Congress in enacting § 203(*o*) was to "give sanctity" to collective bargaining agreements.  Dkt. #277, at 29 (quoting statement of Rep. Herter in 95 Cong. Rec. 210 (1949)).   This argument has been considered by at least two district courts, both of which rejected it.  In <u>Chavez v. IBP, Inc.</u>, No. CV-01-5093-RHW, 2005 U.S. Dist. Lexis 29714 (E.D. Wash. May 16, 2005), and <u>In re Cargill Meat Solutions</u>, No. 3:CV-06-413, 2008 U.S. Dist. LEXIS 31824 (M.D. Pa. Apr. 10, 2008), the courts reviewed the legislative history behind § 203(*o*) and concluded that it did not support a finding of preemption.  Rather, the history showed that Congress was interested in limiting the requirements of federal law; there was no evidence to suggest that it was seeking to override § 218(a).  <u>Cargill</u>, 2008 U.S. Dist. Lexis 31824, at *72-74; <u>Chavez</u>, 2005 U.S. Dist. Lexis 29714, at *118-20.  Defendant cites no cases in which a court has come to a contrary conclusion.

The federal bias toward collective bargaining may lead to the preemption of some state laws or causes of action, but generally this has been when state laws create a risk of *taking away* employee rights provided by collective bargaining or becoming entangled in the collective bargaining process, not when state laws *add* a right that is independent from the agreement.  <u>Livadas v. Bradshaw</u>, 512 U.S. 107, 118 (1994)(preemption appropriate when

17

law imposes "penalty on those who complete the collective-bargaining process" or "those who participate in the process"); <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202  (1985) (state law cause of action preempted when it would require interpretation of collective bargaining agreement).  In <u>Livadas</u>, 512 U.S. at 130, the Court could not have stated it more clearly: "[W]e have never suggested that labor law's bias toward bargaining is to be served by forcing employees or employers to bargain for what they would otherwise be entitled to as a matter of course."  <u>See also Lingle v. Norge Division of Magic Chef, Inc.</u>, 486 U.S. 399, 409-10 (1988) (no preemption when adjudication of "substantive rights a State may provide to workers . . .  does not depend upon the interpretation of [collective bargaining] agreements"); <u>Douglas v. American Information Technologies Corp.</u>,  877 F.2d 565, 569 (7th Cir. 1989) ("[F]ederal labor policy does not prevent states from providing workers with substantive rights independent of the collective bargaining relationship.")  Defendant fails to cite even a single example in which a court found a state law preempted because it provided more rights than would otherwise be provided in a collective bargaining agreement.

Defendant includes a short discussion in its opening brief regarding "field preemption," but it is nothing more than a restatement of its position that § 203(*o*) conflicts with more generous state laws.  Accordingly, it is unnecessary to consider that argument separately.

18

ORDER

IT IS ORDERED that the motion for summary judgment filed by plaintiffs Jeff Spoerle, Nick Lee, Kathi Smith, and Jason Knudtson, dkt. #279, is GRANTED, and defendant Kraft Foods Global, Inc.'s motion for final judgment, dkt. #276, is DENIED. The clerk of court is directed to enter judgment in favor of plaintiffs.  The parties shall determine damages in accordance with the settlement agreement.

Entered this 16th day of June, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge